### THE AURORA.

### THE COLERAINE.

#### (Circuit Court of Appeals, Second Circuit. May 13, 1912.)

#### No. 211.

COLLISION (§ 95*) — TUGS WITH TOWS CROSSING — FAULTS — VIOLATION OF STARBOARD HAND RULE.

One of two crossing tugs with tows which was the burdened vessel under the starboard hand rule, art. 19, inland rules (Act June 7, 1897, c. 4, 30 Stat. 101 [U. S. Comp. St. 1901, p. 2883]), but failed to keep out of the way, is in fault for a collision between their tows, and solely in fault where the other kept her course as required by article 21.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

Collisions with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by John H. Butler as owner of the barge Jack Butler, against the steamtug Aurora, Lehigh Valley Transportation Company, claimant, and the steamtug Coleraine, Thomas Tracy, claimant. Decree against both tugs, and the claimant of the Aurora appeals. Reversed and decree directed against the Coleraine alone.

On appeal by the Lehigh Valley Transportation Company, claimant of the steamtug Aurora, from a decree of the District Court for the Southern District of New York, holding the said tug, and also the steamtug Coleraine, in fault for a collision between a car float in tow of the Aurora and the barge Jack Butler, in tow of the Coleraine. The collision occurred in the East River on January 25, 1911, shortly after 5 o'clock p. m.

Harrington, Bigham & Englar and D. Roger Englar, for appellant Lehigh Valley Transp. Co.

Carpenter & Park, James Emerson Carpenter, and Henry E. Mattison, for appellee Tracy.

Herbert Green, for appellee Butler.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. We think the decision of the District Court holding the Coleraine, at fault for not keeping out of the way of the Aurora and her tow was clearly right. The preponderance of testimony is to the effect that she was the burdened vessel and it was her duty under the starboard hand rule, article 19 of the act of June 7, 1897, to keep out of the way of the Aurora and, if necessary, to slacken her speed or stop or reverse. The district judge finds that she was the burdened vessel and his decision is supported by the testimony. It was, therefore, the duty of the Aurora, under article 21 of the same act, to keep her course and speed. This she did, and we think the district judge was wrong in holding her at fault. If she complied with the law in all particulars affecting the collision, the fact that she had no lookout and no lights is negligible. If a lookout had been on the bow of the tow, he could have done nothing more than report to the pilot of the tug what he knew already, namely, that the Coleraine was crossing the river on an oblique course. The pilot of the Aurora was some three feet above the cars on the float, his view was unobstructed and he testified that he saw the Coleraine from her water line to the top of her smokestack. He also testified that looking over the cars he could see the water twenty feet from the float. A lookout could have given him no information that would have induced him to change his navigation. The sun set on the evening of January 25th, at 5:09, and the testimony is not clear that the collision occurred subsequent to that time, but even if it did, there is no doubt that the entire situation was seen by the pilot of the Coleraine. The absence of lights on the Aurora and

the float had no more to do with the collision than the absence of the necessary number of life preservers in her cabin. The Aurora could not at any time have changed her course or speed without violating the rule. Whether the maneuver which the district judge says she should have made would have resulted as he suggests, is problematical. He says: "A timely starboard helm by the Aurora might have cleared the sterns at the last moment." The answer to this suggestion seems to be threefold. First, a vessel is not responsible for an error made at the last moment, for such an error is made in extremis. Second, while such a maneuver might have eased off the sterns of the tows, it would have had precisely the opposite effect on the bows, with, probably, a more disastrous result than that which actually followed. The master of the Aurora was asked as follows:

"Q. If you had starboarded your helm it would have pulled your stern in towards New York?

"A. Yes, sir; and the bow on to him.

"Q. What would be the greater, the effect on the stern or the effect on the bow?

"A. The effect on the bow would be greater."

Third, the Coleraine in her answers charges as a fault that the Aurora sheered in towards the barge. The only way she could produce this sheer was by starboarding. She did not starboard and did not sheer in toward the canal boat. She kept her course and speed, but is held liable for not doing what the Coleraine charges she did do and was guilty of fault because she did it. In other words, the Coleraine asserts, in effect, that the accident happened because the Aurora starboarded at the last moment and the District Court holds her in fault because she did not starboard at the last moment but kept her course and speed.

The decree is reversed and the cause is remanded to the District Court with instructions to dismiss the libel as against the Aurora and to enter a decree holding the Coleraine solely in fault.