## THE EAGLE.

### SELIG et al. v. BRINDLE.

(Circuit Court of Appeals, Ninth Circuit. May 28, 1923. Rehearing Denied, and Decree Modified as to Costs, July 2, 1923.)

No. 3935.

**1. Collision ⬅39—Vessel without lights after nightfall held solely at fault.**

Colliding vessel, traveling at full speed after nightfall without lights near lighthouse, and turning to port on discovering vessel collided with, *held* solely at fault, notwithstanding the fact that vessel collided with had no lookout other than helmsman in pilot house, and that her master was not 21 years of age.

**2. Collision ⬅77—Absence of lookout not material to liability, if presence of lookout would not have averted collision.**

The absence of a lookout on a vessel collided with is not material, where the presence of one could not have availed to prevent collision.

**3. Collision ⬅123—Vessel at fault has burden of establishing negligence of other vessel.**

Where the fault of one vessel is clear, and is sufficient to account for the collision, that vessel has the burden of establishing the contributory fault of the other vessel by equally clear evidence.

**4. Collision ⬅14—Employment of master aged 19 not negligence.**

No fault could be imputed to a vessel collided with from the fact that her master was but 19 years of age, where the vessel was a motorboat of but 13 tons burden, 43 feet long, and not engaged in carrying passengers; the master having been duly licensed.

**5. Collision ⬅76—Failure of vessel collided with to whistle before turning to avoid collision held not to show vessel at fault.**

Where colliding vessel flashed on her lights only a few seconds before the collision, *held*, that the master of the vessel collided with was excusable for his failure to whistle before turning to starboard to avoid colliding.

**6. Collision ⬅130—Vessel not at fault held entitled to interest on damages.**

Vessel not at fault *held* entitled to 8 per cent. interest on the award of damages, according to the law of Alaska.

Appeal from the District Court of the United States for the Territory of Alaska; Thos. M. Reed, Judge.

Libel by Mary L. Brindle against the gas power boat Eagle, her engine, etc.; S. L. Selig, claimant, and J. R. Heckman, stipulator. From the decree, claimant and stipulator appeal. Modified and affirmed.

Winter S. Martin, of Seattle, Wash., for appellants.

Charles H. Cosgrove, of Ketchikan, Alaska (Robert W. Jennings, of San Francisco, Cal., of counsel), for appellee.

Before GILBERT and RUDKIN, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. [1] The Eagle, northbound rammed the Wildwood, southbound, striking her about eight feet from the stern causing damage to her hull for which a libel was brought, alleging that the Eagle was alone liable for the collision. The answer placed

⬅For other cases see same topic & KEY-NUMBER in 'all Key-Numbered Digests & Indexes

the blame upon the Wildwood alleging that she failed to exhibit lights or to sound a whistle, and that she attempted to make a port to port passing. The court below held that the proximate cause of the collision was the Eagle's negligence in traveling after nightfall without lights and in not turning to starboard on discovering the Wildwood, and ruled against the contention of the claimant that the Wildwood was also at fault for failure to have a lookout other than the helmsman in the pilot house, and that her master, though having a certificate was not 21 years of age, and not qualified to act as such officer, and that he was at fault on discovering the Eagle in not signaling as to passing, and that therefore the damage should be divided.

The contention of the appellants on the appeal is that both vessels were at fault and that there should be a division of liability. The appellee contends that there should be an increase of the sum assessed as damages to the Wildwood, and that interest should be allowed on the award. Upon the evidence in the record, we find no ground to disturb the conclusion of the trial court that the Eagle should be held answerable for the damages to the Wildwood. The collision occurred as the vessels were passing near the lighthouse on Mary Island. The lighthouse keeper and his wife saw both vessels before the collision. They saw the lights of the Wildwood going southward, and soon thereafter heard the exhaust of a boat going northward and looked for its lights and could not see them, but later discovered the north-bound boat and observed that it was traveling at full speed. They testified that, a few seconds before the collision, that vessel flashed on her lights and turned her course to port and toward the island, and that the interval between the flashing on of the lights and the collision was not more than five seconds.

This evidence, which the court below accepted as conclusive, makes it clear that the Eagle was traveling at full speed without lights up to within a few seconds of the time of the collision. The testimony of the master of the Wildwood was that he was at the wheel, that when opposite Mary Island light at about 10:20 p. m., he discovered at a distance of from 100 to 125 feet and about two points off the port bow a black object which he took to be a log or a shadow, but that almost immediately thereafter lights were flashed on showing the masthead and the two side lights of the Eagle, and that he immediately put his helm hard to port, and that at the same time the Eagle turned in the same direction. A deck hand who was lookout on the Eagle testified that the lights were turned on on the Eagle about 20 minutes before the collision, and that the Wildwood was 50 or 60 feet away when he first discovered her; that when he saw her she was two points off the starboard bow, and that as soon as he saw her, he put his wheel hard aport. We agree with the court below in rejecting the testimony that the Eagle turned to starboard. The collision, we think, could only have occurred by the Eagle turning to port, and the testimony of the witnesses at the lighthouse leaves no doubt that both vessels turned toward the shore.

[2] The appellants stress the point that there was no lookout on board the Wildwood. She was a small vessel of 13 tons burden, and

there were but two men on board, the master and the engineer. The sea was calm. The night was clear. The moon was nearly full, but was occasionally obscured by clouds. The owner of the Eagle, who was in the pilot house of that vessel, testified that it was a fairly dark night, that the water was calm, and that 20 minutes before the collision the Eagle had been running in the shadows; that that was "the dangerous part of the trip"; that the moon was not bright, and that it was very cloudy. A colliding vessel is never exonerated from liability for her failure to keep a lookout, unless it appears that the collision would have occurred notwithstanding such failure. We are not convinced that the absence of a special lookout in this case contributed to the disaster. The master saw the Eagle, a dark object on the water, without lights, and took her to be a log. The evidence indicates that he was going on a course which would have cleared the dark object. It is not proven that a special lookout could have seen more than the master saw. Said the court in The Blue Jacket, 144 U. S. 371, 389, 12 Sup. Ct. 711, 718 (36 L. Ed. 469):

"It is well settled that the absence of a lookout is not material, where the presence of one would not have availed to prevent a collision." The George W. Elder, 249 Fed. 956, 162 C. C. A. 154; The Aurora, 198 Fed. 383, 117 C. C. A. 259; The Georg Dumois, 153 Fed. 833, 83 C. C. A. 15.

[3] All of the testimony which is relied upon as showing contributory negligence on the part of the Wildwood, and as sustaining the contention that the damages should be divided, must be taken and viewed in the light of the well-established rule that, where the fault of one vessel is clear and is sufficient to account for the collision, that vessel "has the burden of establishing the contributory fault of the other vessel by equally clear evidence." The City of New York, 147 U. S. 72, 85; 13 Sup. Ct. 211, 37 L. Ed. 84; The Oregon, 158 U. S. 186, 15 Sup. Ct. 804, 39 L. Ed. 943; Compania de Nav. Interior v. Boston-Virginia Transp. Co. (C. C. A.) 278 Fed. 868. In the present case, the evidence was ample to establish the Eagle's negligence. In fact, it showed reckless navigation and disregard of statutory rules. The failure to maintain a special lookout on the Wildwood was of a lower degree of negligence. The utmost that can be claimed of the evidence on which the appellant relies is that it creates a doubt with regard to the management of the Wildwood, a doubt which, under the circumstances, must be resolved in her favor. The City of New York, supra.

[4] We think no fault can be imputed to the Wildwood from the fact that her master was but 19 years of age. The Wildwood was a motor boat of 13 tons burden and 43 feet in length, and was not engaged in carrying passengers. She met the requirement that she be in charge of a person duly licensed for the service in which she was engaged. The master had duly received his license, and the owner was justified in placing the vessel in his charge.

[5] Nor can we find reason for dividing the damage in the fact that the Wildwood failed to whistle, signifying port to port, before turning to starboard. If, indeed, there was time to give such a signal, the master of the Wildwood was excusable for his failure to give it, in view

of the very brief time that elapsed between his discovery of the Eagle and the collision. In sudden and great peril, such a mistake is regarded as an error for which the vessel should not be held responsible. In The Nichols, 7 Wall. 656, 19 L. Ed. 157, the court said:

"Mistakes committed in such moments of peril and excitement, when produced by the mismanagement of those in charge of the other vessel, are not of a character to relieve the vessel causing the collision from the payment of full damages to the injured vessel." The Carroll, 8 Wall. 302, 19 L. Ed. 392; The Lafayette (C. C. A.) 269 Fed. 917; The Stifinder (C. C. A.) 275 Fed. 271.

[6] We are of the opinion that the appellee should be allowed interest on the award of damages, at 8 per cent. per annum, according to the law of Alaska. Steamship Wellesley Co. v. Hooper & Co., 185 Fed. 733, 108 C. C. A. 71; The Nith (D. C.) 36 Fed. 86; The Berengere (D. C.) 155 Fed. 439; The Jeanie, 236 Fed. 463, 149 C. C. A. 515; Cambria S. S. Co. v. Pittsburgh, 212 Fed. 674, 129 C. C. A. 210, 51 L. R. A. (N. S.) 966.

The decree, thus modified, is affirmed.