### ROTTERDAMSCHE LLOYD et al. v. GOSHO CO., Inc.*

(Circuit Court of Appeals, Ninth Circuit. May 12, 1924.)

No. 4169.

1. **Shipping ☞141(1)—Defense of restraint of princes unconscionable.**
   Where shipping companies had full knowledge of restraints imposed by foreign government and space available, and shippers had no such knowledge, and transported goods to be shipped to point of embarkment at great expense, defense of restraint of princes is unconscionable, and cannot be sustained in action for damages for breach of contract.

2. **Shipping ☞141(1)—Restraint of princes clause relates to future restraints.**
   Restraint of princes clause relates to future restraints, not to restraints already existing.

3. **Shipping ☞131—Shipper, induced to hold cotton, entitled to recover demurrage, interest on value, and additional charges for transportation through another carrier.**
   Where shipper was induced to hold cotton ready for shipment on representations of transportation companies that they would be able to ship on vessels presently leaving port, he was entitled, on breach of contract, to recover demurrage, interest on value of goods during delay, and additional charges for transportation through another carrier.

4. **Shipping ☞131—Interest established by local law applied in determining damages for delay in shipment.**
   Courts of admiralty will apply rate of interest established by local law in determining damages during period of delay in shipment of goods.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Maurice T. Dooling, Judge.

Libel in admiralty by the Gosho Company, Inc., against the Rotterdamsche Lloyd, a corporation, and others. Decree for plaintiff, defendants appeal, and plaintiff files cross-appeal. Modified and affirmed.

Nathan H. Frank and Irving H. Frank, both of San Francisco, Cal., for appellants and cross-appellees.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied July 14, 1924.

Edward J. McCutchen, Allan P. Matthew, John F. Cassell, Joseph B. McKeon, and McCutchen, Olney, Mannon & Greene, all of San Francisco, Cal., for appellee and cross-appellant.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. On August 26, 1918, the libelee entered into three contracts of affreightment with the appellants for the transportation of 12,000 bales of cotton from San Francisco to Japan—4,000 bales on the steamer Willis, leaving San Francisco October 25, 1918; 4,000 bales on the steamer Kawi, leaving San Francisco on November 1, 1918; and 4,000 bales on the steamer Tjisalak, leaving San Francisco on December 10, 1918. No part of the cotton was transported, except 650 bales carried by the steamer Kawi, leaving San Francisco December 4, 1918. The present libel was filed in personam, to recover damages for the breach of these several contracts. The court below entered a decree in favor of the appellee for the sum of $37,443.69, made up of the following items: (1) Demurrage charges, $9,431; (2) interest on the value of the cotton during the period of delay in shipment, at the rate of 6 per cent. per annum, $18,860.19; (3) additional freight charges incurred by the appellee in transporting a portion of the cotton by another carrier, $1,188.92; (4) interest on these several items at the rate of 6 per cent. per annum to the date of the decree. The appellants have appealed from the entire decree, and the appellee has appealed from the refusal of the court below to compute and award interest at the rate of 7 per cent. per annum, the rate fixed by law in the state of California, instead of at 6 per cent. per annum, the supposed admiralty rate.

At the time these several contracts were entered into the appellants were operating a fleet of steamers between the port of San Francisco and ports of Japan and the Netherlands East Indies. On July 9, 1918, by direction of the consul general of the Netherlands, freight loaded on steamers leaving United States ports for the Netherlands East Indies and flying the Netherlands flag was classified, until further orders, as follows: (1) Supplies for the Netherlands East Indian government. (2) Essentials destined to the Netherlands East Indian government, to be indicated on an official list to be furnished later. (3) Nonessentials for the Netherlands colonies. (4) Freight for other ports. The Netherlands steamship companies were required to give preference to the freight as above classified. On August 26, by the same authority, one half the tonnage of the steamships Willis and Kawi and the entire tonnage of the Tjisalak was released from the obligations thus imposed, but the latter vessel was required to accept spot freight offered for Netherlands East Indian ports in preference to other ports. This obligation, however, did not require the reservation of space, if the spot freight was not promptly forthcoming.

[1, 2] The appellants contend that the contracts of affreightment contained the usual restraint of princes clause and that by reason of this clause and the restraints imposed by the government of the Netherlands there was no breach of contract, and consequently no liability on their part. The contracts themselves do not contain the restraint of

princes clause, but the appellants contend that the standard form of space reservation was subject to the conditions of the regular bill of lading, and that the regular form of bill of lading contained the clause in question. We would find much difficulty in reading the conditions of the standard form of space reservation and the conditions of the regular bill of lading into these simple contracts, but that question we need not determine. The appellants had full knowledge of the restraints imposed and the space available; the appellee had no such knowledge. With such knowledge, the appellants solicited the freight and undertook to transport it to its destination; they contracted to carry freight far in excess of the entire capacity of the vessels, and refused to carry, even to the extent of the space available or unreserved; the appellee relied, in good faith, upon the contracts, and transported the cotton from Texas and Louisiana to San Francisco at great expense. Under such circumstances, the defense is unconscionable and cannot be sustained. Furthermore, the restraint of princes clause relates to future restraints, not to restraints already existing. The undertaking of the carrier is that he will transport the freight, unless restrained by some future act of government, not that he will transport if present restraints are removed. Campagnie Chemin de Fer Paris-Orleans v. Leeston Shipping Co., 36 Times Law Reports, 68; Ciampa v. British India Steam Nav. Co., Ltd., [1915] 2 K. B. 774; Society Navale De L'Ouest v. Sutherland & Co., 36 Times Law Reports, 682; Balfour Guthrie & Co. v. Portland & Asiatic S. S. Co. (D. C.) 167 Fed. 1010.

[3] Nor was there any error in the measure of damages adopted by the court below, except as to the rate of interest, to be considered later. The parties stipulated that the market value of cotton in Texas and Louisiana, where purchased, between September 1, 1918, and April 1, 1919, was at least equal to the purchase price paid by the libelee, and that the market value in San Francisco and Japan during the same period was at least equal to the purchase price in Texas and Louisiana, with freight added. By reason of this stipulation, the appellants contend that the libelee might have sold the cotton, at any time, without loss, that it was its duty to do so, and that therefore nominal damages is the outside limit of recovery. This contention cannot be sustained, especially in view of the following finding of the court below.

"The evidence, however, is conclusive to my mind that the libelant was induced to hold the cotton here ready for shipment upon the representations of the respondents that they would be able to ship it on vessels presently leaving this port and vessels of the same line."

Under such circumstances, the right to recover demurrage, interest on the value of the goods during the period of delay, and additional charges for transportation through another carrier is fully supported by the authorities. Sutherland on Damages (4th Ed.) § 903; Carver on Carriage of Goods by Sea, §§ 723, 724; 10 C. J. 72, 313; Houston & T. C. Ry. Co. v. Jackson, 62 Tex. 209; Texas Central R. Co. v. Hannay-Frerichs & Co., 104 Tex. 603, 142 S. W. 1163; The Oregon, 55 Fed. 666, 5 C. C. A. 229.

[4] Regardless of the diversity of opinion that may exist elsewhere, the rule is settled in this circuit that, in actions such as this, courts of

admiralty will apply the rate of interest established by the local law. Thus in Steamship Wellesley Co. v. C. A. Hooper & Co., 185 Fed. 733, 740, 108 C. C. A. 71, the rate of 7 per cent. per annum, fixed by the laws of this state, was applied, and in the recent case of The Eagle, 289 Fed. 661, 664, the rate of 8 per cent. per annum, according to the laws of Alaska. Interest should therefore have been computed at the rate of 7 per cent. per annum, instead of 6 per cent. per annum, and to that extent the decree should be modified.

As thus modified, the decree is affirmed, and the case is remanded to the court below, with instructions to modify its decree in accordance herewith.