The COMMONWEALTH.

No. 965–KA.,

First Division, Ketchikan.

April 2, 1928.

Lester O. Gore, of Ketchikan, for libelant.
A. H. Zeigler, of Ketchikan, for respondent.

REED, District Judge.

On the morning of the 17th day of September, 1926, the gas screw vessel Commonwealth collided with the gas screw

Annie in the waters of Sumner Strait, about one and one-half miles to the west of Point Colpoys Light. The Annie was sunk, and everything thereon of value was lost.

The Annie was owned by one Hans Danielson and Ike Buren; each owning a one-half interest. The former brings action on behalf of himself and co-owner, alleging neglect in navigation of the Commonwealth as the cause of the collision, in that there was not a proper lookout kept and maintained on the Commonwealth at the time of the collision.

The intervening claimant, Booth Fisheries Company, denies the allegations of the libel as to negligence, admits there was a collision and the loss of the Annie, and affirmatively alleges negligence on the part of the master of the Annie, in not having proper and sufficient lights on the Annie, as the cause of the collision.

The gas boat Annie was a vessel 39. feet in length and 18 tons' gross and 11 tons' net measurement. She left Ketchikan at 1 o'clock post meridian September 16, 1926, en route to Baranof at the mouth of Chatham Strait, under command of Hans Danielson, and having a crew of one person, Ben Lundin. Her purpose was to proceed to Baranof and there purchase fish from trollers fishing near the cape and transport to Ketchikan, whence they were distributed to points in the United States.

Danielson appears to have been employed by the Atlantic Pacific Fisheries Company to act as purchasing agent as well as carrier of such fish as were purchased by the company to Ketchikan by means of the gas boat Annie.

Proceeding from Ketchikan, according to the testimony on behalf of libelant, at about 2:30 a.m., Ketchikan time, on the morning of September 17th, when about one mile and one-half to the west of Point Colpoys, the Annie developed a hot bearing. Lundin was at that time at the wheel of the Annie, and called to Danielson in the forecastle concerning the hot bearing and the Annie being disabled, and thereupon Danielson, who was in the forecastle,

went to the engine room and shut off the engine, and the Annie lay there about fifteen minutes when the collision occurred.

Some question is raised in the testimony as to the time of the collision. Lundin and libelant Danielson testify it was 2:30 on the morning of the 17th, while the master of the Commonwealth testified it was at 1:45 a.m. This may be accounted for because the master of the Commonwealth was using Sitka time, which was one hour later than Ketchikan time, which seems to be the time used by the Annie.

The sole question on which the case is to be determined is whether or not the Annie's lights were burning and whether or not a proper lookout was kept on board the Commonwealth. If the Annie's lights were burning, as required by the International Rules for vessels of her class, and no proper lookout were being kept on the Commonwealth, the latter would be liable. If, on the other hand, proper lights were not burning on the Annie and the Commonwealth had a proper lookout, there can be no recovery. If the boats were equally, or nearly equally, at fault, the damage should be equally divided.

On behalf of the libelant, both Hans Danielson and Ben Lundin testified that on the morning in question one of the bearings of the Annie became heated, and Lundin, who was at the wheel, called to Danielson, who was in the forecastle, informing him the engine was slowing down, and Danielson stopped the engine. Lundin returned to the pilothouse, situated about fifteen feet from the stern of the Annie. The Annie was equipped with electric lights except the mast headlight, which was a coal oil light. The lights of the Annie consisted of side lights according to regulations, a light abaft the wheel house, and a light in the pilothouse.

Lundin, after he had called Danielson, stood on the hatch of the Annie for some little time, and noticed the running lights, and testified positively they were in first-class condition and burning. In answer to the question, "Did

you notice the other lights?" he answered, "Yes sir, I could see the headlight, it was fine, burning brightly, and the stern light was on bright."

Lundin remained on the hatch of the Annie, which is forward of the pilothouse, a few minutes, and then returned to the pilothouse, where he stood, with the windows of the pilothouse open. While there, he heard a boat coming and saw a light. He then called to Danielson, who was in the engine room, and told him a boat was coming.

Danielson testified he heard the sound of the engine and told Lundin to switch on the pilothouse light. Lundin testified that he then switched on the pilothouse light. This would show all around the horizon. At that time he presumed the vessel would clear the Annie, which was lying about two miles off shore, heading about magnetic north. A light westerly breeze was then blowing.

The boat sighted by Lundin, it afterwards developed, was the Commonwealth, and, at the time she was first seen by Lundin, was about one thousand yards off from the Annie.

When the Commonwealth approached to within about four hundred yards, according to Lundin's testimony, she changed her course and came straight towards the Annie. Lundin then called to Danielson to come on deck. Danielson came to the pilothouse, with a light attached to an extension cord from the engine room of the Annie, and began waving it; and Lundin ran forward on the hatch of the Annie and used a flashlight. In about a minute the Commonwealth struck the Annie on the quarter opposite the pilothouse, smashing the rail and pilothouse and throwing Danielson, who was in the pilothouse, overboard. The Annie then sank in about fifteen minutes.

When the collision occurred, Lundin jumped from the Annie and caught the starboard rail of the Commonwealth and climbed on board.

The testimony on behalf of respondent was to the effect that the Commonwealth was a gas screw vessel of about

66 tons, and 105 feet long; that she was employed in the halibut trade; she was originally schooner built rig with an overhanging bow; several years prior to the time of the collision she was remodeled and a pilothouse built on her some 60 feet from the stem of the vessel. There was also imposed a forecastle, running back from the bow of the boat to a height of about 4 feet above the main deck. Her main mast was immediately in front of the pilothouse; the foremast directly abaft the forecastle. The forecastle was raised considerably, on what is sometimes called a whaleback deck.

The Commonwealth left Ketchikan at 3 p. m. Sitka time, on the afternoon of the 16th of September, and at 1:45 a. m. of the 17th collided with the Annie. At the time of the collision, there was no person on deck except the helmsman, David Nash, who was at the wheel.

The master of the vessel, Nash, and one Hicks, testified as to these facts. Hicks stated he was relieved at 1 a. m. on the 17th by Nash, and proceeded to the forecastle, made a fire, and put on coffee. He then proceeded aft to the cabin, found the skipper there with a can preparing to make coffee. On being told that coffee was ready forward in the forecastle, the master went forward to the forecastle, followed by Hicks. Hicks stated he stood on the dressing table, before the mast, about three minutes, looking around, because the night was lovely and bright, and he could see no vessels or schooner lights, although he could see the range lights at Eye Opener Lighthouse and Point Colpoys. The weather was clear, no wind, no sea, but dark; a dark shadow was around from the land. After standing on the table for about three minutes, he went into the forecastle and took a cup, poured milk into it, and walked about four paces to the stove to pour coffee into the cup, and then there was a sort of crash, and he heard Nash holler, and the engine was put in reverse. It was about two minutes from the time he was standing looking forward until the collision. He and the skipper ran on deck, and, when he reached there, a sailor from the Annie had landed on the

table on the starboard side of the Commonwealth. About a minute and a half elapsed after the collision before he reached the deck.

Martin Bergman, the master of the Commonwealth, testified he was in the wheelhouse of the Commonwealth until 1:35 on the morning of the 17th, and remained until about 1:37 or 1:38 with the helmsman, David Nash; that some eight or nine minutes before the collision he went aft to the cabin where previously he had put on a pot of coffee, thinking it might be boiling. On arriving, found Hicks was there, talking to the engineer. Hicks told him that there was a big fire forward, and then the witness took the pot forward to boil quicker. Hicks evidently followed, but the witness left him in the cabin. In going forward over the table witness looked around and noticed the Colpoys light-beam and a light on the starboard bow; outside of that saw no lights whatever. He consumed about three minutes going to the cabin and returning to make his observations. He then went below and put the coffee on and stood by the stove until it came to a boil; it did not take over a minute; and Hicks came down just as the coffee was boiling. Witness heard a crushing sound and some one hollering, and he went on deck, and saw the outline of a boat on the starboard bow.

David Nash testified, in substance, that he was a married man; had been living for fifteen years in Seattle; had been halibut fishing for the last twenty years, and in the fishing business thirty-nine or forty years; is about 58 years of age. He had been fishing on all kinds of boats and had a great deal of experience on boats of all kinds engaged in fishing. He was in the wheelhouse of the Commonwealth at the time of the collision of the Commonwealth with the Annie. He took his shift at the wheel at 1 o'clock on the morning of the 17th. At the time he took the wheel, Captain Bergman and Kenneth Hicks were there. Hicks went out, and the captain stayed until 1:35, when he changed the course to west southwest. This was ten minutes before the Commonwealth collided

with the Annie. The weather was good, clear, but real dark, very dark, and there were shadows on the water, but the visibility was bad for detecting objects on the water without lights on. He saw a boat approaching at the time the master was in the wheelhouse with him while he was at the wheel. "At the time the master left I was at the wheel on the starboard side." After the captain left, moved to the port side, stayed a little while, came back, and heard a small light engine running, and went back to the port side. It was a small dory which looked like she might come close to the bow. It had no lights but a lamp light. She was coming across, and we were going west southwest. "I think she was close over about north, I am not positive."

The witness then changed the Commonwealth half a spoke and let her come back on her course again and the dory went across their stern.

After passing the dory, it was about two minutes or something like that when the collision occurred. It would not be over two minutes. The witness saw no lights ahead, saw no lights on the Annie at that time. "I would have seen the lights if there were any."

After passing the dory, he moved to the starboard side of the pilothouse and looked at the compass to see if she was on her course, and in a second two lights showed in his face so bright they blinded him, which proved to be the captain of the Annie with an extension light and the boy with him with a flashlight. The witness did not know what lights they were. The witness saw no stern light, masthead light, or pilothouse light ahead. What he observed were moving at the time. He was so close he had no chance to do anything; the distance was not more than the length of the room, and witness started to throw it into reverse gear put his hand on it, turned it around twice, and the vessels collided.

The Commonwealth would not have traveled over 40 feet from the time he saw the lights until the collision, and the

witness testified a lookout on the boat would not have prevented a collision because there were no lights.

The effect of this testimony on behalf of claimant is that the Annie was lying in the roadstead of Sumner Straits without any of her running lights burning, and the collision would not have been avoided even if the Commonwealth had a proper lookout. See The Eagle (C.C.A.) 289 F. 661-663.

The testimony on the part of claimant, however, is not, in my judgment, sufficient to overcome the testimony of the libelant Hans Danielson. It is also subject to some grave suspicion. The witness Hicks testified he stood on the table in front of the pilothouse of the Commonwealth for three minutes immediately before going below to the forecastle, scanning the surroundings, and that he saw no lights of any vessel whatever. He further testified that not over two or three minutes elapsed after leaving the deck before the collision occurred. The master of the Commonwealth also testified he stood two or three minutes before the collision, on the table, and looked around, and saw no lights of any vessel. Yet Nash testified that he heard a dory approaching while in the pilothouse, about two minutes before the collision, saw a light, and changed the course of the Commonwealth half to a full spoke, to avoid a collision. If Hicks and the master of the Commonwealth had been carefully looking around for lights, they would certainly have seen or heard the dory testified to by Nash, as that dory was about to cross in front of them and had a light. Hicks and Nash testified and drew diagrams showing the Commonwealth struck the Annie on the starboard quarter with the bow of the Commonwealth pointing three or four points to port of the stem of the Annie and the Commonwealth was in the position of an overtaking vessel. It is admitted by all that the light on the mast of the Annie was burning at the time and after the collision and that the point of contact on the Annie of the collision was on the poop deck at about the rear of the pilot-

house, and that the deck was smashed and the pilothouse thrown overboard.

The effect of this testimony would be that neither witness on the part of the claimant would be able to see the masthead light of the Annie, which would show only two points abaft the beam. Nash, at the time of the collision, was in the pilothouse of the Commonwealth, and says that, owing to shadows on the water, drift logs could not be seen, and he could not see over the bow of the Commonwealth from the pilothouse for a distance of 60 feet, and that the Commonwealth was within 40 feet of the Annie when he first discovered the waving lights, and he endeavored immediately to throw out the clutch, and that he did not know at the time what he had collided with, whether a raft or scow. Neither of the other witnesses were on deck at the time of the collision, and were not in position to know the location of the vessels at the time.

It is clear from what occurred at the time that the witnesses of claimant were not testifying from personal knowledge as to the direction and place of impact of the vessels. At the moment of impact Lundin sprung from the bow of the Annie and caught the starboard rail of the Commonwealth. He testified he was over the rail when Nash rushed from the pilothouse. Hicks testified when he came up from the forecastle of the Commonwealth a sailor from the Annie was on the starboard side of the table of the Commonwealth. It is admitted by all that the Commonwealth struck the Annie abaft amidships. If the angle of impact of the two vessels was as testified to by Hicks then the master, Lundin could not have crossed the starboard rail of the Commonwealth; for it would be the port rail nearest the point of contact. Nor is it likely Lundin would hasten from the bow of the Annie down to the point of damage in order to get on the Commonwealth. He testifies that he immediately sprang from the bow of the Annie and caught the starboard rail of the Commonwealth. It would therefore appear that, if the

vessel Commonwealth was in the position testified to by Lundin and Danielson, as approaching the Annie and then striking the Annie on her starboard side, all that Lundin would have to do was as he testified; that is, spring from the bow of the Annie and climb over the starboard rail of the Commonwealth. I therefore am of the opinion that the position of the approach of the Commonwealth to an angle of impact on the Annie was as testified to by the libelant and Lundin. Reaching this conclusion, I must further conclude from the testimony that, as the headlight at the mast of the Annie was at all times burning, it could, with ordinary care, have been observed, by a proper lookout on the Commonwealth. As to whether the other running and range lights were burning on the Annie at the time of the collision, I am of the opinion that the claimant has not established by a fair preponderance of the evidence that they were not burning. Both Danielson and Lundin testified they were burning brightly, and it seems to me under the circumstances these witnesses were in a position to know. It is positive testimony as to an affirmative fact. Such positive testimony is of greater weight, everything else being equal, than mere negative testimony such as given by the witnesses on the part of the claimant. Both witnesses, Lundin and Danielson, especially Lundin, appear fair, frank, and above board, and no reason appears why their testimony should be distrusted. It is true after the collision no lights were visible on the Annie except the masthead light, but that is accounted for because the wiring of the electric lights led from the battery in the engine room through the pilothouse and the collision in smashing the poop deck and destroying the pilothouse evidently broke the connecting wiring.

Following the rule of evidence laid down in The Buenos Aires (C.C.A.) 5 F.(2d) 425, 426-429, I am of the opinion all the running lights of the Annie were burning brightly at the time of the collision.

It further appears, the Commonwealth being the moving vessel and the Annie temporarily at rest being re-

**34**

paired, the burden is upon the claimant of the Commonwealth to show the Annie was in fault, and this, in my opinion, has not been done.

I am of the opinion, therefore, that the Commonwealth failed to keep and maintain a proper lookout, and such failure was the cause of the collision. While the International rules do not provide any special position for a lookout, yet they do provide that nothing in those rules shall exonerate any vessel from the consequences of any neglect to keep a proper lookout. Considering the manner of the construction of the Commonwealth, the weather conditions at the time of the collision, I deem that it was necessary that a lookout should be kept on that vessel. While it may be true that in fishing vessels of small tonnage when the pilothouse is within a few feet of the bow of the vessel a lookout may be dispensed with, yet in vessels of the class and construction of the Commonwealth I deem it necessary that a lookout should be kept other than that maintained by the helmsman in the pilothouse. The Commonwealth is 105 feet long, drawing 11 feet aft, with forecastle bow known sometimes as whaleback built about 4 feet above the deck. The main deck is immediately forward of the pilothouse, the foremast-abaft the forecastle deck, and the pilothouse is situated some 60 feet or more back from the stem abaft amidships. The helmsman cannot well see close over the bow of the Commonwealth from the pilothouse. There are several obstructions to vision, making it necessary for the helmsman to move from side to side before gaining a distinct view ahead. The circumstances attending the collision also led me to the conclusion that the helmsman may have been responsible for the collision in not keeping a proper lookout ahead. If any of the lights of the Annie were burning at the time, as testified to, I am of the opinion that a lookout would have discovered them and the collision have been avoided.

Being of the opinion that the collision was occasioned by the fault of the Commonwealth in not maintaining

a proper lookout, a decree should be entered in favor of the libelant for damages to the value of the Annie and cargo and loss of profits, etc.

I have also considered the amount of damages to which libelant is entitled. He claims damages in the sum of $500 for sickness and three weeks' loss of time. I think he is entitled to damages for loss of time and suffering in the amount of $300; for loss of profits of the voyage, $200; for loss of the following articles: For 300 gallons of gasoline at 17½ cents a gallon, $52; for 8 tons of ice on the Annie, $32; for two guns owned by libelant, $75; for watch and chain, owned by libelant and lost, $100; for personal moneys owned by libelant, $200; for tools outside of regular equipment of the vessel, $12; for clothing and bedding owned by libelant personally, $200; for cooking utensils owned personally by libelant, $15; for money held by libelant for purchase of fish, $2,500.

He is also entitled to the value of the boat, tools, and appurtenances belonging to the boat. The libelant claims the value of the boat was about $5,000. Other testimony has been submitted estimating the value of the boat from $2,500 to $4,500. It appears from the testimony that the libelant's boat, the Annie, was bought by libelant for the sum of $2,000 in the spring of 1926, and he made improvements thereon to the amount of a little over $700. I think a fair valuation, under the testimony, of the boat, including emergency line and all tools and appliances pertaining to the boat, would be about $2,800.

Let a decree be prepared in accordance with this opinion awarding damages in favor of libelant against the claimant in the sums specified.