**Kathryn STODDARD et al., Plaintiffs,**

v.

**LING–TEMCO–VOUGHT, INC., et al., Defendants.**

No. CV–72–1294–PGH.

United States District Court, C. D. California.

March 26, 1980.

On Motion to Dismiss April 14, 1980.

On Motion to Dismiss Complaints of Intervenor Oct. 17, 1980.

On Assessment of Prejudgment Interest Jan. 19, 1981.

On Further Motion to Dismiss Complaints of Intervenor Jan. 27, 1981.

James J. McCarthy, Magana, Cathcart & McCarthy, Los Angeles, Cal., for Theriault, 72–1294, Burnett, 73–1290, McGinn, 73–1291, Blanchard, 73–1292, Ditto, 73–1293, and Unsderfer, 73–1294.

Robert S. Morris, San Bernardino, Cal., for Ashland, 72–1319.

Gerald V. Barron, Hoge, Fenton, Jones & Appel, Monterey, Cal., John H. Miltner, Honolulu, Hawaii, for Page, 73–1318, Rose, 73–1319, Reinhart, 73–1320, Myles, 73–1321, and Weimer, 73–1322.

Joan Celia Lavine, Los Angeles, Cal., for intervenors Hoar, 72–1294, and Slagle 72–1294.

Robert C. Packard, William T. Delhagen, Kirtland & Packard, Los Angeles, Cal., for defendants Ling-Temco-Vought, et al.

James Stotter, II, Asst. U. S. Atty., Los Angeles, Cal., for defendant United States.

## ORDER

HATFIELD, District Judge.

IT IS HEREBY ADJUDGED AND ORDERED as follows:

1. There is no right to a jury trial in this case, and trial shall be by the court with an advisory jury.

2. Strict products liability, including the defense of assumption of risk as set forth in Section 402A, Restatement of Torts 2d, comment n. is applicable in this lawsuit.

3. Res Ipsa Loquitur is applicable under the facts as alleged by plaintiffs, as against both the United States and against LTV, et al. The burden of proving the elements of res ipsa loquitur is on the plaintiffs.

4. In exercise of the court's power to control the order of proof to avoid unnecessary delay at trial, the parties shall first present all of their evidence on res ipsa loquitur. If the court, as trier of fact, should determine res ipsa loquitur to be applicable under the facts proven and to have been not sufficiently rebutted or explained by one or all defendants, the court shall find liability at that stage of the trial. If the court finds that the res ipsa loquitur inference either does not apply under the facts proven by plaintiffs or has been sufficiently explained or rebutted by the evidence introduced by defendants, the trial shall then proceed with evidence as to strict products liability and specific acts of negligence.

5. Texas Workers Compensation settlements by Hoar, Blanchard and Ditto are a bar to those plaintiffs' actions against defendants LTV Aerospace Corporation and Vought Corporation, but are not a bar to their actions against the United States or any of the other named corporate defendants.

6. The lawsuits of plaintiff-intervenors Hoar and Slagle shall be bifurcated from and tried subsequently to the trials of the remaining plaintiffs. In the event that the first trial results in a finding of liability against any or all of the defendants, plaintiffs Hoar and Slagle may at that time

318

argue the applicability of the doctrine of collateral estoppel against the defendants.

7. In the exercise of this court's discretion, prejudgment interest will be assessed to any damage award plaintiffs may receive.

8. The issues of liability shall be bifurcated from and determined prior to the issue of damages.

The Court shall follow this order with a memorandum of law setting forth the reasons for its rulings.

## MEMORANDUM

### On Motion to Dismiss

In these consolidated actions, plaintiff personal representatives have brought suit against defendants United States and Ling-Temco-Vought, Inc., *et al.*, for the aircrash death of plaintiffs' decedents. The parties have sought the court's ruling on several motions to dismiss and evidentiary motions. This memorandum sets forth the court's reasons for its previously filed order and rulings on those motions.

### I. *TYPE OF ACTION*

These are fourteen (14) consolidated wrongful death actions arising out of an aircraft crash which occurred on June 13, 1971, when a U. S. Air Force C–135B aircraft crashed into the Pacific Ocean about 700 miles southwest of Hawaii. Everyone on board the plane—crew and passengers—died in the crash. Plaintiffs are the personal representatives of the estates of fourteen (14) of the persons who died in the crash. The corporations which modified the aircraft before its ill-fated mission are defendants in all the actions, and will hereinafter be referred to as "LTV, *et al.*", or as the "corporate defendants". The United States is defendant in five of the actions.

All of the suits against defendant corporations are founded upon the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 761 *et seq.*

▪ Plaintiff Margaret Metcalf, for the estates of decedents Blanchard and Ditto,

has alleged jurisdiction against the United States based both on the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680 and Suits in Admiralty Act, 46 U.S.C. § 741. Plaintiff Charlotte Ashland, for the estate of Donald Ashland, has alleged jurisdiction against the United States under DOHSA. Plaintiffs Twila Hoar, for the estate of Dean Hoar, and Henry Slagle, for the estate of Edward Slagle, have alleged jurisdiction against the United States under both the FTCA and DOHSA. The plaintiffs who brought suit under the FTCA claim that the FTCA is applicable because the alleged negligence took place when the plane was modified in Texas, rather than when the plane crashed in the Pacific Ocean.

The court cannot accept these plaintiffs' argument. First, "... a tort is deemed to occur at the place where injury is sustained regardless of the place of origin of the negligent act." *Chapman v. City of Grosse Pointe Farms*, 385 F.2d 962, 965 (6th Cir. 1967); *Accord, Oppen v. Aetna Ins. Co.*, 485 F.2d 252, 256 (9th Cir. 1973). Before the plane crashed, killing plaintiffs' decedents, the alleged elements of "... a duty, an act or failure to act in violation of the duty, and negligence were outstanding, but no tort was then in being; it was no more than a potentiality or threat." *Sides v. Richard Machine Works, Inc.*, 406 F.2d 445 (4th Cir. 1969). Thus, under the facts as alleged by plaintiffs, this was a tort that accrued on the high seas rather than a tort that accrued in Texas. DOHSA, rather than FTCA is the proper statute upon which this action may be brought.

▪ Defendant United States additionally and correctly points out that 28 U.S.C. § 2680(d) makes the FTCA inapplicable in all cases where a plaintiff has a right of action in admiralty. *See, Roberts v. United States*, 498 F.2d 520, 525 (9th Cir. 1974), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974). Here, plaintiffs have a right of action, in admiralty, under DOHSA for "the death of a person ... caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league

from the shore of any State ... of the United States...." 46 U.S.C. § 761. The Suits in Admiralty Act, 46 U.S.C. §§ 741–752, gives this court jurisdiction over the DOHSA claims against the United States. *Roberts v. United States, supra,* 498 F.2d at 526.

## II. *RIGHT TO JURY*

Defendant LTV, *et al.,* as well as plaintiffs in seven of the consolidated cases, have moved for a trial by jury. Defendant United States, as well as plaintiffs in the remaining seven of the consolidated cases, have waived a jury and contend that the parties have no right to a jury trial in these actions.

■ DOHSA cases are suits for damages "in admiralty". 46 U.S.C. § 761. The parties in an admiralty lawsuit have neither a Constitutional right nor a right under the Federal Rules of Civil Procedure to a trial by jury. *See,* Rule 38(e), F.R.Civ.P.; *Peace v. Fidalgo Island Packing Co.,* 419 F.2d 371, 371 (9th Cir. 1969); *Frederickson v. Luedtke Construction Co.,* 427 F.Supp. 1309, 1317 (W.D.Mich.1977).

There being no right to a jury trial in cases cognizable only in admiralty, the motions for jury trial are denied. *See, McCrary v. Seatrain Lines, Inc.,* 469 F.2d 666 (9th Cir. 1972). Upon the motion of defendants LTV, *et al.,* however, this court shall exercise its discretion under Rule 39(c), F.R.Civ.P. to try these actions with an advisory jury.

## III. *STRICT PRODUCTS LIABILITY*

The corporate defendants have submitted a trial brief in which they claim that strict products liability is inapplicable to the facts of this case. The corporate defendants modified a Boeing Aircraft Company airplane for a secret Air Force mission. The corporate defendants altered the nose of the aircraft, installed eleven windows on the starboard side of the plane, and, to house and conceal a radar antenna, designed and installed a fairing structure on top of the forward section of the plane's fuselage. The corporate defendants characterize their role as providers of a service, rather than sellers of a product for which strict products liability would be applicable.

■ Strict products liability, as expressed in the Restatement of Torts 2d, § 402A, is applicable in admiralty cases in the Ninth Circuit. *Pan-Alaska Fisheries, Inc. v. Marine Construction and Design Co.,* 565 F.2d 1129, 1135 (9th Cir. 1977). The corporate defendants claim, however, that, regardless of the applicability of strict products liability in an appropriate case, the doctrine does not apply under the facts of this case.

■ The corporate defendants state that the airplane modification did not involve a mass-produced product, introduced into the stream of commerce, which caused injury to an unwary consumer. Because this was a unique modification of an airplane, and the work was performed for the U.S. Air Force, rather than for the average consumer, the corporate defendants conclude that § 402A is inapplicable. The court disagrees.

Although the vast majority of products liability cases involve consumers injured by mass-produced products that were introduced into the stream of commerce, the language of § 402A is by no means solely confined to such transactions:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) The user or consumer has not bought the product from or entered

into any contractual relation with the seller.

Restatement of Torts 2d, § 402A.

The definitions, explanations and policy reasons for application of strict products liability, as set forth in the comments to § 402A, clearly apply to the airplane modification involved in this case. "[P]ublic policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance may be maintained." Rest. Torts 2d, § 402A, Comment c. The corporate defendants, and not plaintiffs' decedents, are the ones who could best provide liability insurance, as a cost of production, for injuries caused by a defectively modified plane.

The corporate defendants miss the point when they argue in their brief that "LTV contracted with the USAF, who can hardly be characterized as a consumer who is defenseless and otherwise needs the protection of the law of strict liability in tort." Whatever appeal this reasoning might have in a strict products liability action brought against the corporate defendants by the Air Force, it is irrelevant where the injured users or consumers were Air Force employees and passengers on the plane.

... It is not even necessary that the consumer have purchased the product at all. He may be a member of the family of the final purchaser or his employee ... 'user' includes those who are passively enjoying the benefit of the product, as in the case of passengers in automobiles or airplanes....

Rest. Torts 2d, § 402A, Comment 1.

■ The corporate defendants' argument that they provided a professional service rather than sold a product is unconvincing. The courts indeed have held that strict products liability does not apply to professional services, even when a product is used incident to the service. See, W. Prosser, THE LAW OF TORTS (4th Ed. 1971) p. 679, and cases cited therein. The rationale of this rule is that when a person visits, for example, a doctor or a dentist, he bargains not for a product, but for a treatment or professional opinion, with no guarantee of a cure or a correct diagnosis. See, Newmark v. Gimble's, Inc., 54 N.J. 585, 258 A.2d 697, 702–703 (1969).

This case represents a contrast to the professional service rule. The Air Force surely did select the corporate defendants for their professional skill in modifying the airplane. But unlike the doctor's or dentist's patients, plaintiffs' decedents had a right to expect more than that the corporate defendants had used good judgment in arriving at a professional opinion. The plaintiffs' decedents, rather, had a right to rely on the corporate defendants having delivered the Air Force a plane that would not crash into the sea.

The Air Force delivered to the corporate defendants a product, a United States Air Force C–135 aircraft. The corporate defendants returned to the Air Force a structurally modified C–135 aircraft, a substantially different product. Strict products liability is applicable in this case, regardless of the uniqueness of the product sold. See, Rawlings v. D. M. Oliver, Inc., 97 Cal. App.3d 890, 159 Cal.Rptr. 119 (1979).

■ Assumption of risk is available as a defense here. Rest. Torts 2d, § 402A is the "expression of the theory of strict products liability" applied in admiralty cases in the Ninth Circuit. See, Pan-Alaska Fisheries, Inc., supra, 565 F.2d at 1135. Assumption of risk is available as an affirmative defense under § 402A, but only "[i]f the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product...." Rest. Torts 2d, § 402A, Comment "n". Whether the defense is applicable to these consolidated cases is a question of fact to be determined at trial.

IV. *APPLICABILITY OF RES IPSA LOQUITUR*

■ It is well settled that the doctrine of res ipsa loquitur is applicable to Death on the High Seas Act cases. See, Cox v. Northwest Airlines, Inc., 379 F.2d 893 (7th

Cir. 1967); *Blumenthal v. U. S.*, 189 F.Supp. 439, *aff'd.* 306 F.2d 16 (3rd Cir. 1962); *Dugas v. National Aircraft Corp.*, 310 F.Supp. 21 (Pa.1970) *aff'd. and vacated in part* 438 F.2d 1386, *remand* D.C., 340 F.Supp. 324; *Trihey v. Transocean Air Lines*, 255 F.2d 824 (9th Cir. 1958); *Haasman v. Pacific Alaska Air Express*, 100 F.Supp. 1 (D.C.D. Alaska 1951); *Des Marais v. Beckman*, 198 F.2d 550 (9th Cir. 1952).

The doctrine of res ipsa loquitur is essentially as follows:

> When a thing which causes injury, without fault of the injured person, is shown to be under exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having control uses proper care, then the injury arose from defendant's want of care.

M. Shain, *Res Ipsa Loquitur Presumptions and Burden of Proof* (1945).

The principle is more fully set forth in Section 328D, Restatement of Torts 2d. It is the principle as stated in the Restatement which will be controlling here. *See, also, Hubschman v. Antilles Airboats, Inc.*, 440 F.Supp. 828, 853 (D.C. Virgin Islands 1977). Before an inference of defendants' negligence can be made under the doctrine it is plaintiffs' burden to establish the elements.

Under normal operations and circumstances an airplane crash into the ocean does not ordinarily occur unless someone has been negligent. The happening of the accident and corresponding injury was such as in the ordinary course of things would not occur if the one having control had used proper care.

█ Defendants have adopted a very narrow view as to satisfying the so-called element of exclusive control. It is the position of defendants LTV, *et al.*, that this aircraft was in the exclusive control of the United States Air Force. However, as will be shown, where several parties share control and assume joint responsibility for the injurious instrumentality, both are subject to the doctrine of res ipsa loquitur. Under the facts presently pleaded here, the principle would apply as against both LTV, *et al.*,

and the United States. Plaintiffs allege that the fatal instrumentality, a United States Air Force C–135B aircraft, was significantly modified by defendants LTV, *et al.*, at the specific direction of the United States. Modification included major structural changes to the frame and body and installation of major electronic equipment on the airplane. Prior to the modification the airplane had logged 11,061 flight hours without major problems. After 38.2 flight hours and approximately two weeks from the time of modification, however, the airplane crashed killing all on board. Plaintiffs further allege, among other things, faulty design, construction, inspection and testing of the aircraft by both the United States and LTV contractors during and after the modification.

Res ipsa loquitur has been applied to multiple defendants. *Colditz v. Eastern Airlines, Inc.*, 329 F.Supp. 691 (D.C.N.Y.1971); *Zentz v. Coca Cola Bottling Co. of Fresno*, 39 Cal.2d 436, 247 P.2d 344, 349 (1952); *Becker v. American Airlines, Inc.*, 200 F.Supp. 839 (S.D.N.Y.1961).

█ If it can be shown that there was joint responsibility for the safe operation of this aircraft neither defendant need have exclusive control. *See*, 2 Restatement of Torts 2d, Comment "g". The doctrine may still be suitable where it is shown that one defendant had control over the instrumentality but later relinquished control to another. *Becker v. American Airlines, Inc.*, supra; *Southern Arizona York Refrigeration Co. v. Bush Mfg. Co.*, 331 F.2d 1 (9th Cir. 1964); *Colditz v. Eastern Airlines, Inc.*, 329 F.Supp. 691 (D.C.N.Y.1971). In *Colditz* the court in speaking of the application of res ipsa to two airline defendants charged with negligence for a midair collision states:

> The second condition of invoking res ipsa loquitur is commonly referred to as the requirement that defendant have 'exclusive control' over the injuring instrumentality. But the terminology, 'exclusive control', overstates the principle that the greater probabilities must point to the

defendant as the responsible agent. [citations omitted] Thus 'exclusive control' has been expanded to encompass multiple defendants who are charged by law with joint responsibility for the instrumentality of injury. *Id.* at 693.

LTV, *et al.*, and the United States are the only parties arguably responsible for the accident[1] since other defendant parties to this lawsuit have apparently been exonerated. · Neither the United States nor LTV can escape the application of res ipsa loquitur under a narrow interpretation of the 'exclusive control' requirement. The facts as presently alleged suggest that defendants LTV, *et al.*, and the United States are both subject to the doctrine. Nevertheless, if there is sufficient doubt as to control, that question can become one for the jury or trier of fact. *Northwest Airlines, Inc. v. Rowe*, 226 F.2d 365 (8th Cir. 1955) cited with approval *Barnes v. Northwest Airlines, Inc.*, 233 Minn. 410, 47 N.W.2d 180 (1951).

Defendants LTV, *et al.*, cite various air crash cases where for one reason or another the court found that res ipsa loquitur didn't apply to one of the multiple defendants. *See, Dugas v. National Aircraft Corporation*, 310 F.Supp. 21 (Pa.1970); *Higginbotham v. Mobil Oil Corp.*, 545 F.2d 422 (5th Cir. 1977); *Hubschman v. Antilles Airboats, Inc.*, 440 F.Supp. 828 (D.C. Virgin Islands 1977). In all these cases the doctrine was applied against the owner/operator or the pilot/operator but not against other parties such as manufacturers. While the cases cited are distinguishable factually here, the court does not quarrel with the propositions espoused therein. To recap, if the proof establishes that LTV, *et al.*, did not contribute to any of the causative factors for this crash, the court will rule as a matter of law that the elements of res ipsa loquitur have not been met as to LTV, *et al.*, and the inference of negligence shall not be drawn.

As it now stands, however, the facts as alleged by plaintiffs are sufficient to go forward with the evidence to meet the requirements of the res ipsa loquitur doctrine as against all defendants.

## V. BIFURCATION OF PROOF

■■■ As part of this court's continuing effort to expedite this action as much as possible, the court has decided to structure the presentation of evidence. The order of proof or the manner in which evidence is introduced is a matter resting in the sound discretion of the court. *Pennington v. United Mine Workers of America*, 325 F.2d 804, 817 (6th Cir. 1963), *rev'd. on other grnds.*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Flintkote Co. v. Lysfjord*, 246 F.2d 368, 378 (9th Cir. 1957), *cert. denied*, 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957); *McVey v. Phillips Petroleum Co.*, 288 F.2d 53, 54 (5th Cir. 1961); *See also*, 88 C.J.S. Trial § 96.

In the instant case, the parties shall first present all of their evidence based on the principle of res ipsa loquitur. The procedural effect is that if the court should determine res ipsa loquitur is applicable under the facts proven and to have been not sufficiently rebutted or explained by one or all defendants, the court shall find liability at that stage of the trial. However, if the court finds that the res ipsa loquitur inference either does not apply under the facts proven, or has been adequately explained or rebutted by evidence introduced by defendants, then the trial shall proceed with evidence as to strict products liability as set forth in § 402A, and specific acts of negligence.

Defendants LTV, *et al.*, argue that structuring the order of proof in this manner would "stack the deck" in favor of the plaintiffs. The essence of LTV's position is that it would be prejudicial to require defendants to put on their entire case in chief after plaintiffs present their proof on res ipsa loquitur only to be exposed once again

---

1. I do not mean to imply here that defendants are without resort to explain this crash by pointing to someone or something which in fact caused the fatal accident. Defendants LTV, *et al.*, and the United States are in a far better position than are plaintiffs to present evidence explaining the crash so as to refute an inference that the negligence of the defendants caused the plane to crash and kill all on board.

to further trial on specific acts of negligence, if liability is not found under res ipsa. In short, the procedure may give plaintiffs two attempts to prove the issue of negligence.

Defendants contend that it is inherently unfair to deny them the opportunity to hear and cross-examine all of plaintiffs' witnesses and examine all of plaintiffs' documentary proof before being put to the burden of going forward with its evidence.

Defendant LTV, *et al.*, further argues that as a general rule a plaintiff may not withhold affirmative evidence until after the defendant has presented his case in chief. *Bates v. Newman*, 121 Cal.App.2d 800, 264 P.2d 197, 201 (1953); *Lipman v. Ashburn*, 106 Cal.App.2d 616, 235 P.2d 627 (1951). While the court does not argue with defendant LTV's proposition here, I am of the opinion the procedure adopted for this case is amply justified by the possibility of reducing materially the amount of time necessary to try this case.

While there might be a slight deprivation of a subtle trial tactical advantage here, the goal as I've stated before is to find the truth and do justice in the most expeditious and economical manner possible. The court is of the opinion that the procedure outlined above is the best way to achieve these goals.

Defendants are not prejudiced or put in an unfair position. It does not seem anymore unfair than the normal use of special interrogatories with a jury. For unusual or complex cases a judge may send the jury out to find a specific fact. The fact may be crucial to proceeding further with the trial; in fact it may dispose of liability at that stage of the trial. *Murdock Acceptance Corp. v. Wagnon*, 587 F.2d 764 (5th Cir. 1979) is instructive on this point. There the court in an effort to save time submitted the case to the jury in multiple evidentiary sections. Special interrogatories were used to determine various issues of fact wherein a certain finding had the potential of precluding further evidence and ending the trial at that point. In addition to the special interrogatories, arguments were made to the jury, and instructions were read by the court at the conclusion of each evidentiary submission. The trial court's procedure was challenged on appeal but was upheld as a valid regulation of trial procedure in accordance with Rule 42(b). The Court of Appeals per curiam stated:

> The trial court recognized that it was unusual to try a jury case by multiple presentations of evidence, arguments to the jury, and charges by the court. However, Rule 42(b) of the Federal Rules of Civil Procedure provides for the separate trial of any claim for expedition and economy. *Id.* at 767.

Corporate defendants asserted distinction of res ipsa loquitur as an evidentiary principle from an issue of law or fact has more significance in theory than in substance. While this court recognizes that application of res ipsa loquitur is strictly speaking a principle of evidence, *Siebrand v. Gossnell*, 234 F.2d 81, 87 (9th Cir. 1956), it is sufficiently analogous to a factual or legal claim wherein the rationale for allowing separation under Rule 42(b) would be appropriate. The doctrine of res ipsa loquitur merely attempts to establish the fact of defendant's negligence. It is that negligence which bridges the gap between the act or omission by the defendant and the injury suffered by plaintiff. The doctrine supplies the fact of defendant's negligence.

The procedure I intend to follow in this trial would first allow the issue of negligence to be established by res ipsa, and if the proof as a matter of law fails there, then the issue of negligence may be established, if it can, by specific negligent acts. The court does not agree with the corporate defendants' contention that this trial procedure would cause defendants substantial prejudice.

█ As to defendants' argument that it is unfair to deny them the opportunity to examine plaintiffs' witnesses and documentary proof before going forward with their evidence, the federal rules of discovery are designed to give parties knowledge of all relevant facts before going to trial, thereby preventing surprise. *Shelak v. White Mo-*

tor Co., 581 F.2d 1155 (5th Cir. 1978); Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). It must be assumed here that the parties have been diligently working for their clients' cause for the last eight years or so and shouldn't on the eve of trial be unaware of what the witnesses or documents might say or contain. The discovery rules were precisely designed to prevent a "trial by ambush". Proper use of the discovery rules eliminates any claims of prejudice defendants might have here.

Finally, there is nothing unusual or prejudicial in plaintiffs being allowed two attempts to establish negligence on the part of defendants. It is well settled that a plaintiff may pursue alternate theories of liability. In Blumenthal v. U. S., supra, 189 F.Supp. at 447, the court held:

> The application of the doctrine of res ipsa loquitur does not preclude libelant's proof of specific negligent acts and omissions. It is now well settled that in pursuing alternate theories of liability the libellants do not prejudice their reliance upon the doctrine of res ipsa loquitur. [citations omitted]

Defendants' arguments for not adopting the trial procedure as stated above is unconvincing at this time. Should defendants discover a more convincing argument, they may renew this issue at the final pretrial conference. For the moment, however, I intend to order the procedure of this trial in the manner set forth in the accompanying order.

## VI. WORKMEN'S COMPENSATION ACT

Defendants, LTV, et al., have moved to dismiss the claims of plaintiff Metcalf, as special administratrix of the estates of Rolla Blanchard and Charles Ditto, and plaintiff Hoar, as executrix of the estate of Dean Hoar. These plaintiffs have collected Texas Workmen's Compensation benefits for the deaths of their decedents based on the plane crash which is the subject of these lawsuits. LTV, et al., assert that these workmen's compensation settlements were these plaintiffs' exclusive remedy against all of the corporate defendants named in these lawsuits.

Plaintiffs' decedents, Blanchard, Ditto and Hoar, were all employees of LTV Aerospace Corporation at the time of their deaths. LTV Aerospace Corporation was a Texas corporation covered by a Texas Workmen's Compensation insurance policy. Defendant LTV Aerospace Corporation and the other named corporate defendants performed the aircraft modification work, which is the subject of these lawsuits, in the state of Texas. The heirs of Blanchard, Ditto and Hoar claimed and collected Texas Workmen's Compensation death benefits for the deaths of their respective decedents. The workmen's compensation benefits were paid pursuant to the direction of the Texas Industrial Accident Board.

■ Under Texas law, workmen's compensation provides a worker with his exclusive remedy against his employer for work-related injuries. See, Tex.Rev.Stat.Ann. art. 8306, § 3. "The (Texas Workmen's Compensation) Act prescribes the only remedy; its exclusive features abrogate the right to resort to the admiralty court which otherwise would exist." Miller's Indemnity Underwriters v. Braud, 270 U.S. 59, 65, 46 S.Ct. 194, 195, 70 L.Ed. 470 (1926). The Act applies even where, as here, the employees covered by Texas Workmen's Compensation were fatally "injured out of the State of Texas". Tex.Rev.Stat.Ann. art. 8306, § 19.

Workers' compensation, to the exclusion of any recovery rights available under DOHSA, provides the workers' sole remedy against the employer if, as here, a decedent's employment is non-maritime, the decedent is covered by a state workmen's compensation law which is in full force and effect, the decedent is not covered by a federal workmen's compensation act, and the state act contains an exclusive remedy provision. King v. Pan American World Airways, 270 F.2d 355 (9th Cir. 1959), cert. denied, 362 U.S. 928, 80 S.Ct. 753, 4 L.Ed.2d 746 (1960); see also, Miller's Indemnity Underwriters v. Braud, supra. Summary judgment therefore shall be entered for decedents' employer, defendant LTV Aero-

space Corporation.[2] Summary judgment also shall be entered for defendant Vought Corporation; LTV Aerospace Corporation has since the accident changed its corporate name to Vought Corporation.

■ Although Texas law makes workmen's compensation the workers' exclusive remedy against their employers, the Workmen's Compensation Act nonetheless allows the injured worker to bring suit against third parties. Tex.Rev.Civ.Stat.Ann. art. 8307, § 6a (Vernon Supp.1975); *Watson v. Glens Falls Ins. Co.*, 505 S.W.2d 793, 796 (Tex.S.Ct.1974).

The remaining corporate defendants are Ling-Temco-Vought, Inc. (which later changed its corporate name to the LTV Corporation, another defendant here) and LTV Electrosystems, Inc. (which later changed its corporate name to E–Systems, Inc., also a defendant herein). These defendants assert that they are not true third parties. Both when the airplane was modified and later, when the plane crashed, Ling-Temco-Vought, Inc. (hereinafter "LTV, Inc."), was the parent corporation and LTV Aerospace Corporation and LTV Electrosystems, Incorporated were LTV, Inc.'s subsidiary corporations. These defendants urge that the court should thus view all of the named defendant corporations as the employer of Hoar, Blanchard and Ditto. The corporate defendants emphasize that all of the named corporations were covered under one Workmen's Compensation Insurance Policy.

Contrary to the implication in the corporate defendants' brief [3], the vast weight of authority is that an injured employee of a subsidiary corporation, who is estopped under an exclusive remedy provision in his state's workers' compensation act from suing his employer, may nonetheless bring a third-party claim against the subsidiary's parent or sibling corporation. *See, e. g.,*

2. Because, in ruling on the corporate defendants' motion, the court considered matters outside the pleadings—defendants' workmen's compensation insurance policy and the workmen's compensation settlements of plaintiffs' decedents—defendants' motion to dismiss is treated as one for summary judgment. *See,* Rule 12(b), F.R.Civ.P.; *Solinger v. A & M Records, Inc.*, 586 F.2d 1304, 1308 (9th Cir. 1978), *cert. denied*, 441 U.S. 908, 99 S.Ct. 1999, 60 L.Ed.2d 377 (1979).

3. The corporate defendants claim that parent and subsidiary corporations should be treated as one employer for workmen's compensation purposes. These defendants cite one case and one case only as direct authority on this proposition. The court in the cited case, *Goldberg v. Context Industries, Inc.*, 362 So.2d 974 (Fla.Ct. App.1978) (per curiam), found, "[a]fter a careful examination of the record", but without disclosing what facts in the record it was relying upon, that the parent and subsidiary corporations were joint employers of the injured worker under the Florida Workmen's Compensation Act.

As this court discusses *infra*, however, several courts other than the Florida Court of Appeals have addressed this issue. The overwhelming weight of authority is that parent and subsidiary corporations, absent exceptional circumstances not present here, are separate entities which will not be treated as the joint employer of an injured worker. The court in *O'Brien v. Grumman Corp.*, 475 F.Supp. 284 (S.D.N.Y. 1979) followed this majority rule, citing three federal court cases and four state court cases as supporting authority. The *O'Brien* court discussed the *Goldberg* case as a "brief *per curiam* opinion without citation to any precedent or authority", and as the only case it had discovered which had held contra to the general rule. *See, O'Brien, supra*, 475 F.Supp. at 292.

While not violative of the letter of the Code of Professional Responsibility, the corporate defendants' attorneys' citation to only the aberrant case which supported their argument and their concurrent failure to disclose and discuss state and federal court decisions contrary to their position, certainly violated the spirit of the Code and ill-served their duty as officers of the court. This court believed that the corporate defendants' attorneys' citation to only the one case supporting their position was an implied representation that these attorneys knew of no adverse authority. If these attorneys' failure to cite the majority rule was a knowing omission, the court does not appreciate counsels' lack of candor. *See,* ABA Opinion 280 (1949). In the unlikely event (considering the otherwise excellent research, analysis and argument of the attorneys for the corporate defendants on all the other issues in this case) that the failure to cite the majority rule was due to the fact that counsel found only the one cited Florida case, the court does not appreciate counsel's lack of diligence. *See also, United States v. State Bd. of Equalization*, 450 F.Supp. 1030, 1037 n.6 (N.D.Cal.1978).

*Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655, 661–663 (6th Cir. 1979); *O'Brien v. Grumman Corp.*, 475 F.Supp. 284, 290–293 (S.D.N.Y.1979), and cases cited therein. Coverage of both parent and subsidiary corporations under the same workers' compensation insurance policy has little, if any, relevance to the issue of whether the parent corporation is the subsidiary corporation worker's employer. *O'Brien v. Grumman Corp., supra*, 475 F.Supp. at 292; *Latham v. Technar, Inc.*, 390 F.Supp. 1031 (E.D.Tenn. 1974); *but see, Goldberg v. Context Industries, Inc.*, 362 So.2d 974, 975 (Fla.Ct.App. 1978).

As in this case, an issue in *Boggs v. Blue Diamond Coal Co., supra*, was "whether a multi-unit corporate enterprise should be viewed as a single 'employer' for purposes of liability and benefits under the workmen's compensation statute." *Boggs, supra*, 590 F.2d at 661. The Kentucky courts, like the Texas courts, never had addressed this issue. The court in *Boggs*, therefore, looked to the general principle of Kentucky corporation law that parent and subsidiary corporations are separate legal entities whose separateness should not be disregarded except when the corporate device is used to defraud creditors or for some other illegal purpose. The *Boggs* court concluded that corporations which divide their business enterprise into separate parent and subsidiary corporations may not avoid the consequences of that separate corporate structure and claim that the corporations are but one employer for workmen's compensation purposes.

... [A] business enterprise has a range of choice in controlling its own corporate structure. But reciprocal obligations arise as a result of the choice it makes. The owners may take advantage of the benefits of dividing the business into separate corporate parts, but principles of reciprocity require that courts also

recognize the separate identities of the enterprises when sued by an injured employee.

*Boggs v. Blue Diamond Coal Co., supra*, 590 F.2d at 662.

Texas, like Kentucky, follows the general rule of corporation law that, absent exceptional circumstances, parent and subsidiary corporations shall be recognized as separate entities. Under Texas law, even where a parent corporation owns all of the stock of a subsidiary or has the same directors or officers as the subsidiary, or exercises control over the subsidiary, the general rule is that the corporations are still separate and distinct legal entities. These factors, without more,[4] are insufficient under Texas law to establish an agency relationship or to make the parent liable for the acts of the subsidiary. *See, e. g., Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978); *Reul v. Sahara Hotel*, 372 F.Supp. 995, 998 (S.D.Tex.1974); *Mortgage & Trust, Inc. v. Bonner & Co.*, 572 S.W.2d 344, 348 (Tex.Civ. App.1978, writ refused). Because the corporate defendants have taken advantage of Texas law which recognizes parent and subsidiary corporations as separate legal entities, principles of reciprocity require that they also be viewed as separate entities when sued by the personal representatives of deceased employees. *Boggs, supra*.

In cases which involved covenants not to compete rather than workmen's compensation, the Texas courts have relied on the aforementioned principles of corporation law in holding that workers employed by a parent corporation will be deemed to be the employees of the parent corporation only, and not also the employees of the subsidiary corporation. The subsidiary or affiliated corporation, rather, is deemed to be "another and different employer." *Wright Hydraulics, Inc. v. Womack Machine Supply Co.*, 482 S.W.2d 34, 36 (Tex.Civ.App.1972); *see also, Rimes v. Club Corporation of*

---

**4.** The separateness of the parent and subsidiary corporations is disregarded when their corporate relationship "... 'is used to defeat public convenience, justify wrongs, such as violation of anti-trust laws, protect fraud, or defend crime.'" *Norton v. Integral Corp.*, 584 S.W.2d 932, 935 (Tex.Civ.App.1979) (citation omitted). The corporate defendants herein, however, neither claim that this exception is applicable to the issues in this case nor assert that the quoted exception described the purpose of their own parent-subsidiary corporate relationship.

*America*, 542 S.W.2d 909, 912 (Tex.Civ.App. 1976). The same reasoning supports the holding that, under the Texas Workmen's Compensation Law, parent and affiliated corporations are not the joint employer of a subsidiary corporation employee.

■ Based upon general principles of Texas corporation law, as well as upon the Texas "covenant not to compete" cases and the nearly uniform holdings of courts faced with the same issue under similar state workers' compensation laws, this court holds that decedents Hoar, Blanchard and Ditto were employees of LTV Aerospace Corporation only. The remaining corporate defendants (except Vought Corporation, as LTV Aerospace Corporation is now named), as separate corporate entities, were not the decedents' employer under the Texas Workmen's Compensation Act. These remaining corporate defendants are therefore third parties against which plaintiffs may bring suit.

## VII. *BIFURCATION OF INTERVENORS*

■ Rule 42(b) F.R.Civ.P. allows this court to order a separate trial of any claim or claims and of any separate issue or issues. It is well settled that a trial judge has the right within his discretion to order separate trials in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy. *Moss v. Associated Transport, Inc.*, 344 F.2d 23 (6th Cir. 1965); *In Re Paris Air Crash of March 3, 1974*, 69 F.R.D. 310 (C.D.Cal.1975); *Kisteneff v. Tiernan*, 514 F.2d 896, 897 (1st Cir. 1975). The separate trials rule is a matter of the court's discretion in shaping the procedure of the trial. *See*, 9 Wright and Miller, §§ 2387–2389 wherein it quotes from 39 Minn.L.Rev. 743, 762–763:

> On the whole the separate trial has proved a very flexible and useful instrument for preventing confusion, avoiding prejudice and providing a convenient method of disposing of litigation as fairly and quickly as possible. The rule serves its purpose in modern pleading.

■ The principal goal of Rule 42(b) is efficient judicial administration. *LoCicero v. Humble Oil & Ref. Co.*, 52 F.R.D. 28, 30 (D.C.La.1971).

■ In the instant case the court must weigh whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay. Also taken into consideration is whether the procedure is more likely to result in a just final disposition of the litigation. Here, the court has concluded after due consideration of these factors that a separate trial would be appropriate for plaintiffs in intervention.

It is evident from the pretrial hearing conducted on January 16, 1980, that counsel for plaintiffs Hoar and Slagle intend to pursue a trial strategy somewhat different from the remaining 12 plaintiffs. For instance, counsel for Hoar and Slagle does not agree with counsel for the remaining plaintiffs on the identity and corporate interrelationship of defendants LTV, *et al*. *See* Tr. p. 108. Additionally, plaintiffs Hoar and Slagle indicate they may proceed on an intentional tort theory of recovery. Tr. p. 107. This is also unique to these plaintiffs.

Moreover, plaintiffs-in-intervention have several legal issues peculiar only to them. They include the issues of timely application for permissive joinder and the class certification/decertification issue.

It is both unnecessary and unwarranted to delay this action any longer. Plaintiffs other than Hoar and Slagle have agreed to the issues and claims and for the most part the trial strategy. I conclude that the most expeditious and convenient manner of proceeding with this action is to bifurcate for the purposes of trial Hoar and Slagle from the remaining plaintiffs. Ordering separate trials for these plaintiffs will eliminate what would otherwise be an extended trial. My principal goal in regulating the procedure of this trial is efficient judicial administration.

Nearly nine years have gone by from the crash of this airplane until trial. For the families of the innocent decedents that

amount of time is inexcusable. It is the duty of this court to separate out those claims, issues and parties which will result in the speediest relief to the plaintiffs. To date there has been far too much unnecessary delay, inconvenience and costs related to this case.

In sum, not only does counsel for plaintiffs Hoar and Slagle intend to pursue a trial strategy somewhat different from the other 12 plaintiffs, there are several issues and claims raised by plaintiffs Hoar and Slagle which are quite apart from the issues raised by the remaining 12 plaintiffs.

The court does not intend to delay this trial in any manner for any period of time to consider those issues.

Separate trial for these plaintiffs meets the alternative requirements of Rule 42(b). Separate trials will be in furtherance of convenience, be conducive to expedition and economy and is the best way to "... secure the just, speedy, and inexpensive determination ..." of the lawsuit. Rule 1, F.R. Civ.P. Therefore, the claims and issues brought by plaintiffs Hoar and Slagle against defendants LTV, *et al.*, be, and hereby are, separated from the claims of the remaining plaintiffs. The motion to dismiss plaintiffs-in-intervention is hereby denied at this time.

## VIII. *SEPARATION OF LIABILITY FROM DAMAGES*

■ Ordering separate trials on liability and damages is firmly within the discretion of the court. *In Re Master Key Antitrust Litigation*, 528 F.2d 5, 14 (2nd Cir. 1975); *Moss v. Associated Transport, Inc.*, 344 F.2d 23 (6th Cir. 1965). Where the issues of liability and damages are distinct and separate it is certainly not improper to conduct separate trials. Defendants LTV, *et al.*, agree that in the interest of judicial economy the issues of liability should be bifurcated from the issue of damages. However, they argue that the same jury should be used to decide both issues. LTV, *et al.*, bases its argument upon the contention that the liability and damage issues are inextricably intertwined. Contrary to the

position of defendants LTV, *et al.*, however, it does not appear to me at this point that the liability issue is entwined to any great degree with the issue of damages.

■ The actions are premised basically on a wrongful death theory. All plaintiffs were killed when the airplane crashed. The evidence used to prove liability would not, in my opinion, need to be used to prove damages. Nor is there any likelihood of prejudice to either side by the decision to bifurcate these issues.

The two issues are bifurcated in order to achieve the goals of convenience, expedition and economy. *United States v. International Business Machines Corp.*, 60 F.R.D. 654 (S.D.N.Y.1973); *Kisteneff v. Tiernan*, 514 F.2d 896 (5th Cir. 1975); see, generally 9 Wright & Miller, Fed.Prac. & Pro.: Civil § 2390.

## IX. *PRE–JUDGMENT INTEREST*

■ If the court finds any or all defendants to be liable in any or all of these consolidated cases, pre-judgment interest shall be assessed to the damages awarded. The court finds no "peculiar circumstances" to except these cases from the general rule that pre-judgment interest will normally be assessed in admiralty cases. *See, Grace Line, Inc. v. Todd Shipyards Corp.*, 500 F.2d 361, 366 (9th Cir. 1974).

## MEMORANDUM

### On Motion To Dismiss Complaints of Intervenors

Before the court in these consolidated wrongful death actions is the motion of defendant United States of America to dismiss the complaints of intervenors Hoar and Slagle. Jurisdiction vests in this court under the Suits in Admiralty Act, 46 U.S.C. § 741.

The procedural history of these cases, as it relates to the pending motion, is set forth by defendant United States in its brief.

These are wrongful death actions against the United States and others arising out of the alleged death of plaintiffs' decedents in

an airplane accident on the high seas on June 13, 1971. Suit was filed against the United States in June, 1972 by plaintiff Ashland. On June 12, 1973, one day before the running of the statute, the court issued an order certifying the consolidated cases as a class action. In July, 1976, the court decertified the class action, and plaintiffs Hoar and Slagle filed motions to intervene in the consolidated actions. The motions were granted.

Defendant, United States of America, in December, 1976, filed a motion to dismiss the complaints of plaintiffs in intervention Hoar and Slagle, CV–72–1294, on the ground that the United States had not waived its sovereign immunity because the actions were time barred. United States District Judge Albert Lee Stephens, on September 1, 1977, dismissed the action against the United States as to Hoar and Slagle, holding that the plaintiffs were time barred. On May 1, 1978, Judge Stephens reconsidered his earlier order dismissing the United States and amended the order allowing Hoar and Slagle to amend their complaints to assert jurisdiction under the Suits in Admiralty Act. Judge Stephens stated that the amendment would relate back to the time of the "filed amended complaint," apparently meaning the court's certification of the class action one day before the running of the statute of limitations and a relation back to the date of June 12, 1973.

Subsequent to his May 1, 1978 order allowing Hoar and Slagle to amend their complaints so as to relate back to June 12, 1973, Judge Stephens recused himself from the consolidated cases. Thereafter, I (United States District Judge Paul G. Hatfield) was appointed to try these cases.

I have studied the renewed motion of defendant United States to dismiss the intervenors' complaints for failure to file within the two year statute of limitations of the Suits in Admiralty Act. The United States has cited no new significant cases or changes in the law on this subject that have developed since Judge Stephens issued his May 1, 1978 order. I shall not reverse Judge Stephens' ruling.

I was assigned as the district judge to try these cases. I do not sit in review of Judge Stephens' prior rulings as an appellate court. Judge Stephens, in his September 1, 1977 and May 1, 1978 orders, thoroughly considered the issues in this motion to dismiss. First Judge Stephens decided that the actions of the intervenors were barred by the two year statute. On reconsideration, Judge Stephens ruled that the statute of limitations was tolled for the intervenors during the pendency of the class action, relying on *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1973).

The United States argues that two grounds distinguish these cases from *American Pipe*: (1) *American Pipe* was not an action against the United States; (2) *American Pipe* was not an action based on the Suits in Admiralty Act. Other courts, however, have applied *American Pipe* to toll statutes or limitations in suits against the United States. *See, e. g., Ashland Oil Co. v. Phillips Petroleum Co.*, 554 F.2d 381 (10th Cir. 1975), *cert. denied*, 434 U.S. 921 and 968, 98 S.Ct. 396 and 513, 54 L.Ed.2d 278 and 456 (1977) (court tolled "whatever statute may be applicable"); *Jimenez v. Weinberger*, 523 F.2d 689 (7th Cir. 1975), *cert. denied*, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976) (court tolled 42 U.S.C. § 405(g) statute of limitations of Social Security Act); *Executive Jet Aviation, Inc. v. United States*, 507 F.2d 508 (6th Cir. 1974) (court tolled Federal Tort Claims Act statute of limitations); *Barrett v. United States Civil Service Commission*, 439 F.Supp. 216 (D.D.C.1977) (court tolled statute of limitations in Title VII action).

The question of whether *American Pipe* should also be applied in suits against the United States where jurisdiction is based upon the Suits in Admiralty Act is a difficult question which Judge Stephens thoroughly considered, and then reconsidered. It is the province of an appellate court and not this court to pass on the correctness of Judge Stephens' ruling on this close question.

## 330

The United States' renewed motion to dismiss shall be denied. An appropriate order shall issue.

## MEMORANDUM

### On Assessment of Prejudgment Interest

In a memorandum filed on April 14, 1980 in these consolidated Death on the High Seas Act ("DOHSA") actions, this court ruled that pre-judgment interest would be assessed to any damages awarded against defendants. After trial before an advisory jury in April and May, 1980, this court found both defendant United States and defendants LTV, et al., liable on the claims remaining against them. In this memorandum, the court sets forth its reasons for assessing the pre-judgment interest on damage awards against defendants LTV, et al., at eight percent (8%) per annum, compounded annually, from June 13, 1971, the date that plaintiffs' decedents died in the plane crash.

DOHSA cases are suits for damages "in admiralty". 46 U.S.C. § 761. The allowance of pre-judgment interest in admiralty cases "rests with the trial court's sound discretion. . . ." *Williamson v. Western Pacific Dredging Corp.*, 441 F.2d 65, 67 (9th Cir. 1971), *cert. denied*, 404 U.S. 851, 92 S.Ct. 90, 30 L.Ed.2d 91 (1971). Despite the request of defendants LTV, et al., (the "corporate defendants"), for the court to reconsider its order that pre-judgment interest will be assessed, these defendants have not pointed to, and the court has found, no "peculiar circumstances" to except these cases from the rule that pre-judgment interest normally will be assessed in admiralty cases. *See, Grace Line, Inc. v. Todd Shipyards Corp.*, 500 F.2d 361, 366 (9th Cir. 1974).

■ This court, therefore, now must determine the rate of pre-judgment interest and from what date it shall be assessed. These tasks are made quite simple as to defendant United States. 46 U.S.C. §§ 743 and 745 provide that pre-judgment interest on damages awarded against the United States shall be limited to four percent (4%) per annum from the date that the plaintiffs filed their suits.

No statute, however, sets the rate of pre-judgment interest and the date from which such interest shall be assessed in DOHSA actions against defendants other than the United States. Those determinations, rather, are matters entrusted to the court's discretion. The corporate defendants assert that, in the interest of uniformity and fairness, the court should assess no more than the same four percent (4%) per annum pre-judgment interest against the corporate defendants that it assessed against the United States.

It is basic hornbook law that the United States enjoys sovereign immunity from suit, except to the extent it consents to be sued. *See, United States v. Mitchell*, 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607, 613 (1980). The four percent (4%) per annum pre-judgment interest ceiling of 46 U.S.C. §§ 743 and 745 is merely a statutory limitation on the waiver of sovereign immunity.

The corporate defendants, however, are not similarly situated to the United States. *See, Complaint of Sincere Navigation Corp.*, 447 F.Supp. 672, 676 (E.D.La.1978) (four percent interest maximum statutory interest awarded for damages owed by United States; six percent interest awarded to United States on cross-claim against Sincere). The corporate defendants are not sovereigns who are immune from suit except to the extent they consent to be sued. Congress did not by statute limit the amount of pre-judgment interest which may be assessed against private defendants in DOHSA actions, and thereby left this calculation to the discretion of the trial court. In exercising this discretion to set an equitable rate of pre-judgment interest, the unfairness would not be in setting different rates of pre-judgment interest against the United States and private party defendants; inequity would result rather from depriving plaintiffs of the full pre-judgment interest to which the court deems them entitled because of the fortuitous circumstance that the United States is also a party defendant.

 Because the court does not feel bound to set the rate of pre-judgment interest on damages against the corporate defendants at four percent (4%) per annum, the court must determine what rate should be assessed. Pre-judgment interest, no less than damages, is an element of recovery in DOHSA suits which must be "... a fair and just compensation for the pecuniary loss ..." sustained by the heirs of plaintiffs' decedents. 46 U.S.C. § 762. The Ninth Circuit Court of Appeals, in several early breach of contract cases, assessed pre-judgment interest in admiralty at a rate identical to the forum state's statutory post-judgment interest rate. *See, H. Liebes & Co. v. Klengenberg*, 23 F.2d 611, 615 (9th Cir. 1928), *cert. denied*, 277 U.S. 596, 48 S.Ct. 559, 72 L.Ed. 1006 (1928); *Rotterdamsche Lloyd v. Gosho Co.*, 298 F. 443 (9th Cir. 1924), *cert. denied*, 266 U.S. 621, 45 S.Ct. 99, 69 L.Ed. 472 (1924); *Steamship Wellesley Co. v. C. A. Hooper & Co.*, 185 F. 733 (9th Cir. 1911) (applied California seven percent statutory interest rate).

These early cases, while not expressly overruled, have been ignored by the Ninth Circuit in an admiralty case brought not for breach of contract, but for personal injuries. The court, in *Sauers v. Alaska Barge and Transport Inc.*, 600 F.2d 238 (9th Cir. 1979), did assess pre-judgment interest at a rate identical to the statutory rate of the forum state (eight percent set by court identical to the eight percent set by Rev.Code of Wash., § 4.56.110). The *Sauers* court, however, in setting the pre-judgment interest at eight percent, made no mention of the early cases and made no mention of the Washington statutory rate. The court, rather, assessed pre-judgment interest at eight percent per annum in "... the interests of justice and the best interests of the parties." *Sauers v. Alaska Barge and Transport, Inc., supra*, 600 F.2d at 248.

The issue thus is what rate of pre-judgment interest will provide the decedents' heirs with a fair and just compensation and be in the interests of justice. The plane crash which is the subject of this lawsuit occurred on June 13, 1971. Courts in admiralty cases since that date have assessed pre-judgment interest at rates ranging from four percent to 12 percent per annum.[1] This court will follow the lead of the Ninth Circuit Court of Appeals in *Sauers, supra*, and award eight percent per annum pre-judgment interest on the damage award, compounded annually. *See also, Sea-Land Service, Inc. v. Eagle Terminal Tankers, Inc.*, 443 F.Supp. 532, 534 (W.D. Wash.1977) (awarded eight percent per annum pre-judgment interest, because a lesser rate over the years 1968–1977 would deny the plaintiff full restitution).

 The corporate defendants also request that pre-judgment interest only be awarded from the dates that the complaints were filed, since defendants did not cause any such delay in the filing of the complaints. This argument, however, is specious. Pre-judgment interest in DOHSA cases is not an element of punitive damages assessed only against a defendant who uses delay tactics. Pre-judgment interest, rather, is assessed pursuant to the statutory mandate that plaintiffs in DOHSA actions receive fair and just compensation for the pecuniary loss sustained by the heirs of the decedents. Defendants had the use of the death award money during the period between the plane crash and the filing of the complaints, and are now "... in poor position to complain when required to pay interest on it." *First National Bank of Chicago v. Material Service Corp.*, 597 F.2d 1110, 1121 (7th Cir. 1979). This court, therefore,

---

1. *See, e. g., Sauers v. Alaska Barge and Transport, Inc.*, 600 F.2d 238, 248 (9th Cir. 1979) (eight percent); *Complaint of M/V Vulcan*, 553 F.2d 489, 491 (5th Cir. 1977) (per curiam), *cert. denied*, 434 U.S. 855, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977) (12 percent, a rate equivalent to the injured party's cost of borrowing); *Norfolk Shipping and Drydock v. M/y LaBelle Simone*, 537 F.2d 1201 (4th Cir. 1976) (12 percent); *Federal Barge Lines, Inc. v. Republic Marine, Inc.*, 472 F.Supp. 371 (E.D.Mo.1979), *aff'd.*, 616 F.2d 372 (8th Cir. 1980) (ten percent, court looked to prime rate); *Sea-Land Service, Inc. v. Eagle Terminal Tankers, Inc.*, 443 F.Supp. 532, 534 (W.D.Wash.1977) (eight percent, court looked to prime rate); *Chute v. United States*, 466 F.Supp. 61, 70 (D.Mass.1978) (four percent).

in these consolidated DOHSA actions shall award pre-judgment interest from June 13, 1971, the date of plaintiffs' decedents' deaths.[2] *Accord, Dugas v. National Aircraft Corp.*, 438 F.2d 1386, 1392 n.11 (3d Cir. 1971); *National Airlines, Inc. v. Stiles*, 268 F.2d 400, 405–06 (5th Cir. 1959), *cert. denied*, 361 U.S. 885, 80 S.Ct. 157, 4 L.Ed.2d 121 (1959).

An appropriate order shall issue.

## MEMORANDUM

### On Further Motion To Dismiss Complaints of Intervenors

Defendants LTV, et al. (the "corporate defendants") have moved to dismiss the complaints-in-intervention of plaintiff-intervenors Hoar and Slagle (the "intervenors"). The parties have briefed the issues, and the matter is ripe for adjudication.

## I.

## FACTS

On June 13, 1971, an aircraft modified by the corporate defendants for the United States Air Force crashed into the Pacific Ocean, killing all persons on board. The Death on the High Seas Act ("DOHSA") has a two year statute of limitations. 46 U.S.C. § 763. Actions on behalf of the heirs of twelve of the persons killed in the crash were filed prior to the June 13, 1973 expiration of the statute of limitations. On June 12, 1973, one day prior to the expiration of the two year DOHSA statute of limitations, United States District Judge Albert Lee Stephens, Jr. *sua sponte* certified the twelve actions as a class action. No party had moved for class certification, and Judge Stephens certified the class without holding a hearing on the matter or giving prior notice to the parties.

On the motion of the corporate defendants, Judge Stephens later decertified the class. Judge Stephens cited two decisions in which the Ninth Circuit Court of Appeals held that Rule 23, F.R.Civ.P. does not permit certification of a class whose members assert independent tort claims for damages only, arising out of the same occurrence.[1] Judge Stephens made his order decertifying the class effective July 29, 1976.

On July 29, 1976, the Slagle claimants filed notice of their motion for leave to intervene in the twelve consolidated, but now decertified, DOHSA cases. On July 30, 1976, the Hoar claimants filed notice of their motion to intervene. The corporate defendants filed their opposition to the motions for leave to intervene, and Judge Stephens held a hearing on the motions. Judge Stephens, on August 23, 1976, granted the Hoar and Slagle motions to intervene, without addressing the effect of the statute of limitations on the intervenors' claims.

Subsequent to his order granting the Hoar and Slagle motions to intervene, Judge Stephens recused himself from the consolidated cases. United States District Judge Paul G. Hatfield was appointed to try the consolidated actions. The corporate defendants thereafter filed this motion to dismiss the complaints of intervenors Hoar and Slagle as barred by the statute of limitations.

The key question presented in the corporate defendants' motion to dismiss is whether the DOHSA statute of limitations was tolled during the time that the cases

---

2. The court in *Sauers v. Alaska Barge and Transport, Inc.*, 600 F.2d 238, 248 (9th Cir. 1979) allowed pre-judgment interest not from the date of the plaintiff's injuries, but from the date plaintiff filed his complaint. *Sauers* was a case brought by the plaintiff in admiralty for personal injuries and was not a DOHSA action. The court did not explain why it awarded interest only from the date the complaint was filed and did not state that this was a rule to be followed in awarding pre-judgment interest in all admiralty cases. Indeed, the general rule in this circuit is that interest in admiralty cases is allowed from the date of injury. *See, The President Madison*, 91 F.2d 835, 845–847 (9th Cir. 1937).

1. *McDonnell Douglas Corp. v. United States District Court*, 523 F.2d 1083 (9th Cir. 1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976); *LaMar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973).

were certified as a class action. If the statute were tolled during the pendency of the class action, the intervenors' actions were timely filed. If, however, the pendency of the class action did not toll the running of the statute, the complaints in intervention—filed more than five years after the plane crash—could be barred by the two year DOHSA statute of limitations.

## II.

### EXISTENCE OF A CLASS ACTION

The corporate defendants assert that the procedure whereby the court certified the class exceeded the powers of the court, making its certification ruling a nullity. If a class action never existed, it could not effectively toll the statute of limitations for intervenors.

The court agrees that not all the procedural requirements of Rule 23, F.R.Civ.P. were met in the June 12, 1973 class certification. The court did find that the consolidated cases met all the Rule 23(a), F.R. Civ.P. prerequisites for class certification. The class certification order, however, was issued by the court *sua sponte* without granting parties prior notice or any opportunity to be heard on the issue. While nothing in Rule 23 specifically prohibits *sua sponte* class certification by the court, the language of the rule relates to class actions maintained upon the request of the parties.[2]

Despite the unusual procedure used to certify the class, the cases nonetheless proceeded as a valid class action, for the purpose of tolling the statute of limitations, from the date that the court issued its certification order until the date that the court's decertification order became effective. The corporate defendants claim that the court's failure to comply with Rule 23—including certifying a class where none was sought—deprived the court of its power to create a class action. This court disagrees.

Rule 23 is a rule of civil procedure, not a rule of jurisdiction.[3] Congress, through statutes, gives the federal courts jurisdiction. The Federal Rules of Civil Procedure, including Rule 23, F.R.Civ.P., were promulgated by the Supreme Court and not by Congress. These rules do not affect the jurisdiction of the federal courts. *See,* Rule 82, F.R.Civ.P.; 28 U.S.C. § 2072; *Brennan v. Silvergate District Lodge No. 50,* 503 F.2d 800, 804 (9th Cir. 1974). Noncompliance with Rule 23, F.R.Civ.P., or with any other rule, may indeed be reversible error on appeal; but noncompliance with Rule 23 does not deprive the court of its jurisdiction or power to certify a class.[4] *Cf., Jimenez v. Weinberger,* 523 F.2d 689, 698 (7th Cir. 1975) (court did not exceed its jurisdiction by granting class relief through failing to comply with Rule 23(c)(1)).

Moreover, the corporate defendants' argument, if accepted, would eviscerate the judicial economy principles behind the class

---

**2.** Rule 23(a), F.R.Civ.P. provides that "[o]ne or more members of a class may sue or be sued as representative parties...." Rule 23(c)(1) refers to "... an action brought as a class action...."

**3.** Courts have tried cases as class actions, in the interest of judicial efficiency and economy, long before the adoption of Rule 23, F.R.Civ.P. *See,* 7 Wright and Miller, Federal Practice and Procedure: Civil § 1751 (1972), citing, *e. g., How v. Tenants of Bromsgrove,* 1 Vern. 22, 23 Eng.Rep. 277 (Ct.Ch.1681); *West v. Randall,* 29 Fed.Cas. No. 17, 424 (C.C.D.R.I.1820).

**4.** The Supreme Court long ago spoke of this procedural rules-jurisdiction distinction. The appellant in *Venner v. Great Northern Railway,* 209 U.S. 24, 28 S.Ct. 328, 52 L.Ed. 666 (1908), argued that noncompliance with the predecessor rule to Rule 23.1, F.R.Civ.P. (shareholder

derivative actions) deprived the federal court of jurisdiction. The Supreme Court responded as follows:

> ... It is argued that a compliance with that rule is essential to the jurisdiction, and that a controversy of the general nature contemplated by the rule is beyond the jurisdiction of the Circuit Court, unless the plaintiff shows the existence of all the facts which the rule makes indispensable to his success in the suit. But this argument overlooks the purpose and nature of the rule.... Neither the rule nor the decision from which it was derived deals with the question of the jurisdiction of the courts, but only prescribes the manner in which the jurisdiction shall be exercised....

*Venner v. Great Northern Railway, supra,* 209 U.S. at 33–34, 28 S.Ct. at 330–331.

action statute of limitations tolling rule of *American Pipe Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Certification of a class by a federal district judge is notice to the world that the lawsuits are proceeding as a class action and that the statute of limitations is tolled for all class members during the pendency of the class action. Under the corporate defendants' approach, however, anytime a potential intervenor had the slightest doubt whether a judge had correctly applied all the procedural requirements of Rule 23, F.R.Civ.P., he would be forced to file a motion to intervene to protect his claim. As the court discusses, *infra,* this is precisely the result that the Supreme Court in *American Pipe* hoped to avoid.

## III.

### TOLLING OF THE STATUTE OF LIMITATIONS

The corporate defendants next argue that, even if a class action existed, it did not toll the two year DOHSA statute of limitations for intervenors Hoar and Slagle.

The Supreme Court has held that "... the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 776, 38 L.Ed.2d 713 (1974) (footnote omitted). The pendency of the class action in these consolidated cases would have tolled the DOHSA two-year statute of limitations so as to make timely the Hoar and Slagle motions to intervene. The corporate defendants nonetheless claim that, for two reasons, the class action should not have tolled the statute of limitations for intervenors Hoar and Slagle.

■ First, the corporate defendants argue that intervenors Hoar and Slagle did not actually rely on the existence of the class action. This assertion, even if accepted as true, however, would not bar the intervenors' actions.

We think no different [tolling] standard should apply to those members of the class who did not rely on the commencement of the class action (or who were even unaware that such a suit existed) and thus cannot claim that they refrained from bringing timely motions for individual intervention or joinder because of a belief that their interests would be represented in the class suit. *American Pipe & Construction Co. v. Utah, supra,* 414 U.S. at 551, 94 S.Ct. at 765.

Second, the corporate defendants argue that *American Pipe* is inapplicable to these facts. In addition to their previously rejected argument that there was no valid class action in these cases, the corporate defendants argue that *American Pipe* applies only when class certification is denied due to a failure to meet the numerosity requirement of Rule 23(a)(1), F.R.Civ.P. and that applying *American Pipe* in these cases would result in unfairness to the corporate defendants.

Class certification in *American Pipe* was denied due to a failure to satisfy the requirement of Rule 23(a)(1) that the class be "... so numerous that joinder of all members is impracticable...." *See, American Pipe, supra,* 414 U.S. at 543, 94 S.Ct. at 761. The rationale behind the *American Pipe* statute of limitations tolling rule, however, is by no means confined to cases wherein class certification is denied for lack of numerosity.

The central consideration in *American Pipe,* rather, was to promote efficiency and economy of litigation by making it unnecessary for unnamed class members to file duplicative motions or to intervene during the pendency of motions for class certification.

The reasoning of the *American Pipe* opinion requires that its doctrine be applied in situations beyond the particular facts presented in that case.... Assuming that the defendant receives fair notice of the nature of the intervenors' claims, this rationale would not seem to depend on the specific ground on which class certification was denied in *American Pipe....*

*McCarthy v. Kleindienst*, 562 F.2d 1269, 1272 (D.C.Cir.1977) (class certification denied for untimeliness and lack of typicality). *See also*, cases cited by the court in *McCarthy v. Kleindienst, supra*, 562 F.2d at 1274.

The broad tolling principle of *American Pipe* is no less applicable where, as here, the class, originally certified, was later decertified on a basis other than lack of numerosity. *See, Haas v. Pittsburgh National Bank*, 526 F.2d 1083, 1097 (3d Cir. 1975) (*American Pipe* applied where district court decertified the class because the named plaintiff was not a proper class representative).

Nor is it unfair to defendants to toll the statute of limitations in these cases. The corporate defendants claim that, because none of the twelve original plaintiffs filed a class action complaint, the corporate defendants were not put on notice of the number and generic identities of potential plaintiffs in the class. In his order certifying the class, however, Judge Stephens stated that the government had supplied the court with a list of all those on board the plane, that 24 civilian and military personnel were on board the plane, that all 24 died in the crash, and that the cause of death was identical for each. The decedents of intervenors Hoar and Slagle were two of those 24 persons on board that LTV-modified airplane.

When Judge Stephens filed his class certification order, the corporate defendants had "... the essential information necessary to determine both the subject matter and size of the prospective litigation...." *American Pipe, supra*, 414 U.S. at 555, 94 S.Ct. at 767.

The corporate defendants' motion to dismiss the intervenors' complaints as barred by the statute of limitations shall be denied. An appropriate order shall issue.